I, Joseph Hawkins, Comptroller of the Treasury of the State of North Carolina, do hereby certify the above and foregoing account to be raised from documents filed in this office, except as to the fine, which is charged agreeably to law. I likewise certify that agreeably to the certificate of the Clerk of the County Court of Sampson, Redmond Crumpler, etc., are named and returned as the securities of Alexander McAlister, sheriff of the aforesaid county of Sampson, and being liable, with him, for the taxes of 1821, payable on or before the 1st of October, 1822, and it is wished that judgment be had against them accordingly, in favor of the Governor, for the use of the State aforesaid.
 (Signed) J. HAWKINS, Compt. J. HAYWOOD, Pub. Treas.
March 31, 1823.
A fi. fa. issued on this judgment, which was superseded (53) under the fiat of the Chief Justice. At the next term a rule was obtained upon the plaintiff to show cause why the judgment should not be vacated and the execution set aside. Upon showing cause, it appeared that the defendants in the original suit were ignorant of the motion to enter up the judgments; that McAlister and his sureties executed only the following bonds, viz., one payable to the Governor for $4,000, conditioned to account for the poortaxes; one other, also payable to the Governor, for $4,000, conditioned to account for the county contingent taxes; one payable to the chairman of the county court for $4,000, conditioned to account for all monies received on account of public buildings, and a bond to the Governor for $10,000, conditioned to make due return of all process coming to him as sheriff. The conditions of all the bonds contained these general words, that the said A. M. should "in all things well, truly, and faithfully execute the saidoffice," and "pay all fees and sums of money received by virtue of any process." His Honor, Judge Mangum, at the request of the counsel for the present plaintiff, and pro forma, discharged the rule, whereupon the plaintiffs appealed. *Page 41 
Various acts of Assembly have at different times imposed duties upon the sheriff which did not, in a strict and common-law sense, appertain to the office as such, and have endeavored to enforce the performance of these duties by prescribing, in substance, the several conditions of the bonds required to be given. While he had no other duties to perform than such as properly belong to the office of ( 58 ) sheriff, the bond was directed to be made payable to the Governor, as it yet is, and his successors in office, and conditioned for the due execution of the duties incident to his office as sheriff, viz., the return of process and precepts, the payment of money levied by virtue of them, and the proper performance of his duty in any other respect. 1777, ch. 118, R. C. Afterwards he was required to enter into a bond payable in the same manner, and to be conditioned for the due collection from the collectors and the payment and settlement of the public taxes. 1784, ch. 219.
The only other bond required is to be made payable to the chairman of the county court, and conditioned for the due collection of and accounting for the county and poor tax. 1798, ch. 509.
The bonds into which the sheriff actually did enter in this case are, first, one payable to the Governor and conditioned for accounting for the monies he may receive for the poor taxes of the county, followed by a general condition for the performance of his duty as sheriff.
2. One payable to the Governor and conditioned for accounting for all monies that the sheriff may receive on account of the county contingenttaxes; and a general condition for satisfying all sums and fees received or levied by him by virtue of any process, and for the faithful performance of the duty of sheriff.
3. One payable to the chairman of the court, conditioned for accounting for the monies he may receive on account of the public buildings, followed by a general condition like the others.
4. One payable to the Governor and conditioned for the performance of his office as sheriff.
The only one of these bonds upon which it can be contended with any shadow of argument that the securities are chargeable is that payable to the Governor, and conditioned for the *Page 42 
(59) payment of the county contingent taxes. But they cannot be charged by force of these words without putting upon them a sense which they will not bear, either in their common acceptation or from legislative exposition. No person could understand from them that they import the public taxes, for they are used in contradistinction to them, both in common discourse and in the several acts of Assembly. One bond is to be given for the public taxes; another for the county and poor tax, nor is there any law which uses the terms, county contingent taxes, as signifying public taxes. So far from it, that county taxes are called those that are levied to defray the contingencies of the several counties for the purpose of distinguishing them from the taxes which are levied for the use of the public treasury. 1777, ch. 129.
So that, if this bond had been made payable to the chairman of the county court, the securities would by force of the terms have been made chargeable for the county taxes, for they must necessarily understand that for these, and these alone, they were called upon to subscribe the bond.
But it is said that if the securities are not chargeable by force of these terms, they are nevertheless liable by the general obligation contained in the condition, viz., "to satisfy all sums and fees received or levied by him by virtue of any process, and for the faithful performance of the duty of sheriff." Now, this argument proves too much, for every other bond entered into by them contains the same engagement; so that they would be bound three times to the Governor and once to the chairman of the county court, for the payment of the public taxes. They might them be sued for them, indifferently upon either of the bonds made payable to the Governor, whilst, when they entered into them, they must have clearly understood that each bond provided for a distinct and specific object. The general condition for the performance of the sheriff's duty is improperly inserted in all the bonds, except that given (60) under the act of 1777; it has no business there, and if put there by clerical caution or inadvertence, it can only be construed in subservience to the specific object which the bond is designed to secure; noscitur a sociis. Thus in the bond given under the act of 1777, it cannot be extended to other duties imposed upon the sheriff by subsequent laws, which duties are of a nature not properly belonging to the office of sheriff, for which extra duties, as they may be called, bonds with a particular condition are required to be given. The securities to such a claim might properly answer, We have *Page 43 
entered into no such stipulations. It may happen that the sheriff is not able to prevail upon the same securities to subscribe all the bonds; one set may be willing to be responsible for his duty as sheriff; another for his collection of the public taxes; yet, if the general terms are inserted in the condition, and are to be construed without regard to the subject-matter of the bond, each set of securities will be liable for every default the sheriff makes in any of his duties. And, not liable by a common-law process, with notice to them, and an opportunity of making a defense, but as in this case, by a summary proceeding and a judgment entered up, on the comptroller's certificate.
If the condition of this bond had recited that the sheriff by virtue of his office was bound to collect the county taxes, and to account for them according to law, the authorities are full to prove that the general engagement afterwards inserted in the condition shall receive such a construction as will restrain it to the particular duty for which the bond was given; and that in a case between individuals. I consider the doctrine thus established as more directly applicable to the case of a public officer, whose peculiar duties are pointed out by a public law, and the substantial terms of the condition of the bond he is to give, also defined by it. The law having by a particular provision imposed the duty, and defined its extent, (61) a security called upon to execute a bond would naturally confide that he was binding himself so far and not further than the law had bound the sheriff, and would not be likely to inquire, scrupulously, whether the bond contained a term beyond the law. Whatever answer this argument would admit of in the case of a bond sued in common law, it seems to me decisive when the bond is sought to be enforced by a summary remedy. The authority I rely upon for the construction of the condition of this bond is the Liverpool Waterworks v. Atkinson, 6 East, 507. There the condition of the bond recited that the defendant had agreed with the plaintiff to collect their revenues from time to time for twelve months, and afterwards stipulated that at all times thereafter during the continuance of such his employment, and for so long as he should continue to be employed, he would justly account and obey orders. The breach assigned was the not accounting for money received after the twelve months, for a period during which the defendant remained in the plaintiff's service, which it was contended he was bound to account for, by force of the positive engagement *Page 44 
contained in the bond. But it was held by the Court that the general words must be construed to be restrained by the recital stating an appointment for a specific time, and that the obligation must be confined to the twelve months.
For these reasons I am of opinion that the judgment should be reversed.