Ruffin, C. J.
 

 The action is debt on a bond for $4,000, payable to the Stale; and, after reciting that' the obligor, Me-Alpin, had been duly appointed Sheriff of Robeson County, the condition is, that if he “shall well and truly collect, receive and pay over all such moneys as shall be levied according to law by way of taxes, which he may by acts’of the General Assembly be bound as Sheriff to collect; and also all fines, forfeitures and amerciaments which may be laid, accrued or assessed, and which the said Sheriff may be bound to collect;. and also all other moneys which- it may b'e the duty of the sheriff to collect, and pay over to the person or persons entitled to receive the same under the orders of Court, and agreeably to the laws-of the State, for County uses and purposes, and at the times specified by law, and shall' well and truly perform all the duties of County trustee and treasurer of public buildings, as prescribed by an act of the General Assembly passed in the year 1831, entitled “an act &c.” then the above obligation to be void ; otherwise to' remain in full force and effect.”
 

 The statute mentioned in the bond is the private act of
 
 *146
 
 1831, c. 52; which authorised the County Court of Robeson, a majority of the Justices being present, at the next Court, at which, according to the law as it then stood, the Court 0Ugjjt t0 appoint a County Trustee-and Treasurer of public buildings, by order of the Court to abolish those offices; and in that case the Sheriff is required to perform those duties, and to give a bond drawn so as expressly to include them as his official duties.
 

 The principal question in the case is, whether, under the circumstances stated in the case, the instrument thus set forth is the deed of the defendants ; they having pleaded
 
 non est factum.
 
 It is said, that it is not, for want of delivery to persons competent to- receive it on behalf of the State as her agents; because the offices mentioned in the act, as distinct offices, had not been abolished in the manner required by the act, and therefore, that the County Court had no right to demand, nor power to accept, this bond from the Sheriff.
 

 We think it did not duly appear, that the Court did abolish the offices in question. It seems, indeed, highly probable, in point of fact, that there was an order of the Court, consisting of the proper number of Justices, for that purpose. And perhaps, from the minutes found in the two books mentioned in the case, the County Court might properly have a record engrossed of the proceedings at August term 1832, shewing that the Court was held by a majority of the Justices, and did make the order. Every Court is, necessarily, the judge of its minutes and records; what constitutes them and whether they are true memorials of its acts. Generally, another Court gets them under the seal of the Court, whose proceedings they purport to set forth; and, that seal verifies them as records. If the County Court of Robeson regards the entries made by the chairman in one book, as part of its records,-as well as the minutes kept by the clerk in another book, or regards both as but minutes from which the record may be drawn out, the two might be incorporated into one record by that Court; and a transcript of that would be record evidence to another Court. So, if the County Court does not regard the entry by the chairman, as a part
 
 *147
 
 of its records’or minutes, yet if the Court knows or is fied on that and other evidence, that in August 1832 those offices were abolished by an order of the Court, made when a majority was present, and that the clerk omitted to enter the order at the time, there is no doubt of the power of the Court, and, when necessary for the purposes of justice, of the propriety of exercising the power of making the record speak the truth, by now¡inserting in it, as of the proper time, the entries which the clerk omitted. But nothing of either kind has heen done in this case. There is no authentic recognition by the Court of the supposed entry by one of its body in 1832, as a" part of the records of the Court; but only the evidence of the present clerk of the Court, offered to identify, but really not identifying with any degree of certainty, that entry as being a part of the minutes of the court, and not a private memorandum of the person who made it. In our opinion, that is not competent evidence of the record. We are likewise of opinion, that the omissions in the record could not be supplied by oral testimony, that such an order was made by a majority of the justices. The counsel urged its competency and sufficiency upon the ground, that it was not a judicial sentence, but merely a decision by the persons then forming the court. But the acts of a public body can be certainly known only by their authenticated resolutions, put into the permanent form of writing; and must not depend upon the fallible comprehensions and frail recollections of bystanders to establish them. This is more especially true in respect of a body constituting a Court of Justice, and acting ordinarily as a Court of Record, according to the course of the common law. Their records establish their acts, and nothing less.
 
 Wade
 
 v
 
 Odeneal,
 
 3 Dev. 423. But the private act, out of which this controversy has arisen, is express, that <:the Court” might abolish the offices “by order of Court;” which shews the capacity in which the Justices acted.
 

 Our opinion, therefore, is, that (however it might have been made to appear) it did not appear on the trial, that the offices had been abolished; and therefore, if the case turned
 
 *148
 
 on this question alone, as a question of evidence, -we should affirm tlie judgment.
 

 But in the opinion of this Court there ought to be judg-n-j8nt against .the defendants, whether those offices were a-feoiished or not: for we think the bond good as a voluntary-one. The doubt can only be, whether the State has accepted this bond-; for her capacity to take a bond cannot be denied. It is contended, that there has been no acceptance by the State, because the casé had not arisen, in which, according to the statute,
 
 the Court
 
 ought to have taken such a bond, and, therefore, that the Justices were not the authorised agents of the State to accept a delivery; without which it ir not a deed. As to bonds of Constables and other officers for the faithful discharge of their duties in respect of private persons, we have held,
 
 Shirley’s case,
 
 1 Ired. 597, that, if payable to the State, they must be taken in the cases .and by the persons designated by Law, or they cannot be supported. Serious doubts were entertained in that case .and it was decided with hesitation; yet [the Court certainly means to adhere to it, as an authoritative precedent. Indeed, if we then erred, the mischief, that might otherwise have arisen from it, has been corrected by the subsequent act ,of 1842, c. 51; whi.ch removes all ground for reconsidering the question. But, as intimated in
 
 that
 
 case and upon the reasons and authorities there adduced, we think this case .does not fall within the rule there laid down. Here is a person
 
 de facto
 
 filling a public office, one of the duties of which is to receive and disburse public monies on behalf of ¡the Public, and he gives a bond to the State binding himself to collect and legally apply that portion of the revenue: such a bond, payable to the State for the benefit of the body politic, stands upon ground essentially different from one thus payable for the benefit of private persons. In the latter case there is no presumption of acceptance by thesovereign, unless there be an actual delivery in the cases and to persons authorised by the Legislature to take it. But such express acceptance by an agent for the State need not be shewn, when the bond is upon
 
 its
 
 face exclusively for the use of the
 
 *149
 
 State; as one for securing public money must be admitted to be. To such a bond, the rule, that, from the benefit to the obligee, acceptance is to be presumed, applies with as much reason, as if the obligee were a private person. In each case there is a capacity to accept the deed and the same interest; and, as regards interests directly and clearly public, the assent of the sovereign to the security must be inferred, as that of the citizen would be in like circumstances. It is true, this bond does not cover moneys payable into the pub-lie treasury. -Still it is public money, applicable indeed in the County of Robeson, but to purposes of the most general utility. It is to sustain the administration of justice by building a Court house and prison, paying jurors and the expenses of public prosecutions, to open roads, build bridges, diffuse education through all conditions of the people, and the like public services. To secure money needful for those ends government, the State cannot be presumed to be opposed or to yield a reluctant assistance ; but, asa conclusion of natural and legal reason, her assent must be presumed, until the contrary be declared by the Legislature. The delivery to the justices, as proved by the subscribing witness, was sufficient until rejection by the obligee. 3 Rep. 28, 5 Rep. 119 ; and we do not, therefore, look back beyond the bond itself, to see whether the sheriff rightfully undertook the duties of the county trustee or not, or whether the court could, as the gents of the State, have required the bond. It is sufficient that it was given to the State for purposes which unquestionably make it the interest of the State, as such, to accept it; and, therefore, such acceptance is presumed. Although it may not be given in the way the State preferred, she must be willing to take it as given, rather than have no security.
 

 In the otherquestions thereseems not much difficulty. The report of the committee of finance, as their report, was not evidence ; though it seems probable, from seveial provisions of the acts, such as swearing the committee and the like, that it may have been intended to be
 
 prima facie
 
 proof. But we think, that, as a settlement of the sheriff himself with the public, it is evidence. The act requires him, un-
 
 *150
 
 Her a penalty, to render his accounts and settle with the committee of finance. This is both to afford the necessary information of the state of the county treasury and to secure the accountability and punctuality of the officer. The settlement is therefore an act performed in the regular course of official duty ; and therefore is, at least
 
 •prima facie,
 
 binding on the sheriff and his sureties.
 
 Governor
 
 v
 
 Twitty,
 
 1 Dev. 159. In this case, it was proved, that the sheriff made no objection to the items or the balance of the account; and there was no attempt on the trial to shew its inaccuracy. If evidence at all, it was in the absence of all proof to the contrary evidence of funds in August, 1841. The
 
 onus
 
 was with the sheriff to shew, that, between February and
 
 August,
 
 he had disbursed the balance he had admitted at the former period. It was his duty to keep the accounts and he had possession of the vouchers.
 

 There is then an objection taken to the style or addition given to the relator, in the order for the money and in the declaration, as “chairman of the-board of commissioners for Common Schools.;” which is presented in several different forms, but it is substantially the same in all. It is founded on this r the act of 1838, c. 8, calls those persons “ superintendents” and not “ commissioners.” But the act does not make them a corporation, nor confer a name by which they are to contract or sue. They are still but natural persons, filling a certain office, and they sue as natural persons;
 
 Ferebee
 
 v
 
 Sanders,
 
 3 Ired. 360; another addition is but surplusage. Indeed, it is nothing to the defendants whether the money was properly appropriated by the County Court or not. The statute, Rev. St. c. 28, s. 22, “invests the County Court with full power to direct the application of the County funds to the purposes specified therein, or to any other good and necessary purpose for the use of the County.” And by Rev. St. c. 29, s. 4, the County Trustee, and, by sec. 11, the sheriff, is to apply the money in the payment of claims as the County Court may direct. The Sheriff therefore is not to judge, but the Court, of the propriety of the order, It is his part to pay it, if he has funds; .as the order is his justification.
 

 
 *151
 
 It is, also, by torce of those provisions of the statutes, quiring the County Trustee or Sheriff to pay the claims lowed by the County, that suits may be brought and recoveries had on their bonds in the same manner as on other official bonds of sheriffs or other officers, that a person, in whose favour an order is made, may sue in the name of the State, it is the duty of the Sheriff having funds, to pay an order, and for the breach of that duty, after notice, the statute gives to the creditor of the County an action on the official bond. There remains to be considered the objection, that there was not reasonable time after demand before suit. If not bound to pay immediately, yet here no further time was wanting ; for the sheriff asked none. He did not state, that he had not funds, or that he was uncertain upon that point. Indeed, he gave no answer to the demand but the smile, which, connected with the fact of his silence and the non-payment of the money, the witness construed into a refusal to pay — and not without reason, we think. When the creditor asks payment and the debtor condescends to no reply but to laugh at him, it was at least fit to be left to the jury, as evidence of a refusal. They so found in this case ; and, after a refusal, the creditor may sue without delay.
 

 The judgment must therefore be reversed; and judgment entered for the plaintiff on the verdict.
 

 Per Curiam, Judgment accordingly.