## Staunton.

J. H. Stinson, John H. Lester, Green Charles,
H. G. Charles, John H. Dotson and
Alice Waldron

v.

Board of Supervisors of Buchanan County and
E. E. Smith, Treasurer of Buchanan County.

September 19, 1929.

Absent, West, J.

The opinion states the case.

*A. A. Skeen* and *Chase & McCoy*, for the appellants.

*Williams & Combs, H. Claude Pobst* and *Barnes Gillespie*, for the appellees.

PRENTIS, C. J., delivered the opinion of the court.

The appellants are sureties on the last of three bonds executed by A. C. Stacy, who was treasurer of Buchanan county, and they are here appealing from a decree which determines his liability and their own as his sureties.

Stacy was elected treasurer of Buchanan county November 6, 1923, but failed to qualify and execute his bond before January 1, 1924, and the court, by order of February 4, 1924, declared the office vacant, but upon the same date, upon motion of Stacy, appointed him treasurer, and he then qualified and executed a bond in the penalty of $75,000.00, with the Maryland Casualty Company as surety. Thereafter, July 30, 1924, Stacy was allowed to give another bond in the penalty of $100,000.00, with these appellants and one S. R. Hurley as his sureties, in lieu of the bond which he had previously given with the Maryland Casualty Company as surety.

These appellants allege in their answer to the original bill, that after this $100,000.00 bond was given (four months thereafter in fact), Stacy made his regular annual settlement with the board of supervisors, by which settlement it was shown that he had fully and correctly accounted for all funds which came into his hands between January 1, 1924, the date his term of office began, and July 30, 1924, the date of the new bond, and that as a result of this settlement the board of supervisors, at its regular meeting, December 3, 1924, by a formal order, released the Maryland Casualty Company as surety upon the first bond

in force prior to the execution of the $100,000.00 bond. They file this order as a part of their bill, and it recites that the treasurer had fully and correctly accounted for all funds which came into his hands from January 1, 1924, until July 30, 1924. Thereafter, November 9, 1925, fifteen months after the $100,000.00 bond was given, in which appellants, together with Hurley, are sureties, Stacy made his regular annual settlement with the board of supervisors, showing the amounts to the credit of the various funds under the control of the board of supervisors, and they file a copy of this settlement with their answer to the bill.

About one year later, pursuant to Code, section 2777 (as amended by Acts 1926, chapter 14), the Circuit Court of Buchanan county entered an order requiring the commissioner of accounts to examine and report as to the sufficiency of the $100,000.00 bond of Stacy, and on August 4, 1926, the commissioner reported that this bond was insufficient in penalty; whereupon the court entered an order requiring the treasurer to execute a new bond, as the law directs, in the penalty of $250,000.00.

In accordance with this order, Stacy, together with appellants as sureties, on August 10, 1926, executed the last bond, in the penalty of $250,000.00. Within a month after this bond had been executed, the State Accountant, at the request of the board of supervisors, made an audit of the accounts of the treasurer, and found that at that time he was in default in the sum of $89,596.40.

In June, 1927, the board of supervisors of Buchanan county filed its bill against A. C. Stacy, treasurer, and against S. R. Hurley, one of the sureties on the $100,000.00 bond, and the appellants, alleging the deficiency shown by the report of the State Accountant

as of September 6, 1926, prayed for a full accounting and for a recovery against the defendants of the amount found to be due.

With the exception of S. R. Hurley, the sureties on the two bonds are identical, and it is shown that at the time of the institution of this suit Hurley was insolvent.

All of the defendants filed their answers to the bill August 1, 1927, denying all liability, and joined in the prayer for an accounting, and thereafter, December 1, 1927, Hurley filed an amended answer in which he alleges that there is no liability on him as surety on the $100,000.00 bond, and that the existing liability rests solely upon the sureties on the latest bond of $250,-000.00.

There was a decree of reference to M. P. Farrier, as special commissioner, with directions to make a full and complete settlement of accounts between the complainants, the board of supervisors, and the defendants; to report the status of the same, together with any other matter deemed pertinent by himself, or requested by any other party.

Farrier, special commissioner, after due notice, opened his proceeding August 29, 1927, upon which date the appellants, together with all the other parties, were present by counsel, and thereupon this stipulation was agreed to by all the parties to the proceeding:

"It was then mutually agreed that the audit of the accounts of A. C. Stacy, treasurer, made by the State Accountant as of September 6, 1926, should be treated and considered as *prima facie* correct, but with the right reserved to any party in interest to point out and have corrected any specific errors therein, as well as in any prior settlement of Mr. Stacy's accounts."

This agreement appears to be perfectly clear in its import. It means that it was then agreed that Stacy,

as treasurer, was in default as of September 6, 1926, for the period covered by the audit of the State Accountant, in the total sum of $89,596.40, subject to the right of any interested party to show any error therein.

The commissioner reported that he kept the account open until he filed his report November 18, 1927— that is, for a period of more than two months—and that all the parties were given opportunity to produce evidence of any errors in any of the previous settlements.

The commissioner's report was confirmed, without objection or exception, by decree entered December 1, 1927, and it was adjudged that the balance due Buchanan county by A. C. Stacy, treasurer, as of August 29, 1927, was $116,290.82, and reserved all other questions involved for future decision.

At the time this decree was entered, December 1, 1927, E. E. Smith had, at the previous November election, been elected treasurer of Buchanan county to succeed Stacy. It is said in the brief for the appellees that the reason for the reservation was that the time was so short between the date of the confirmation of this report and the date when Smith would take over the office, January 1, 1928, and thereupon take over the moneys, records and duties of the office, that the court, after making this adjudication, left further proceedings in the case open until Smith should become treasurer, and that this was the most practical and expeditious method of dealing with the subject.

After January 1, 1928, there was a further accounting between Stacy and the board of supervisors as to collections and disbursements made by him after August 29, 1927, the date of the adjustment made by Farrier, special commissioner, and before January 1,

1928, when his term expired, and this accounting left Stacy in arrears and in default for an additional sum, which added to the amount named in the decree showed that he was then in default in the sum of $136,493.75.

Then Smith, in March, 1928, filed his petition in the case, to which the treasurer, Stacy, Hurley and the appellants were made defendants, which recited all of these previous proceedings, alleged that he (Smith) had been elected, had qualified and assumed the duties of the office of treasurer of Buchanan county, January 1, 1928, and that Stacy, the former treasurer, was in default in the gross sum just named, and prayed to recover that amount of Stacy and the defendants. Expressed differently, the petition was a formal demand for settlement of the amount clearly due by Stacy. Then the appellants filed their joint answer to Smith's petition, in which they reiterated the principal defenses which had already been made in their answer to the original bill. They specifically denied the legality of the $250,000.00 bond, but did not deny any of the other allegations of the petition. They then for the first time, April 27, 1928, nearly twelve months after the bill had been filed, made the defense which they are now here relying upon—that is, in substance, they claim that Stacy was in default for a large sum, to-wit, $55,315.87, prior to July 30, 1924, when the $100,000.00 bond was executed; and they asked for another order of reference in order to ascertain the precise amount due by Stacy for his breaches of duty and defalcation, if any there were, which occurred prior to July 30, 1924; that is, upon the very day of the final decree they asked to reopen every issue in the cause which had been theretofore decided, as well as to begin an inquiry into the issue first tendered then in the answer to the Smith petition.

The appellees moved to strike out the answer, claiming that the matters referred to had been adjudicated by the decree of December 1, 1927, and that this answer was equivalent to an exception to the original report of the commissioner, which, as has been stated, had been previously confirmed without exception.

The decree shows on its face that the court "asked counsel for defendants if they questioned the correctness of the final settlements exhibited with the petition of E. E. Smith, treasurer, and they stated that they had no errors therein to point out, but that they desired further time to check said settlements to ascertain if there were any errors therein, but no sufficient reason was given therefor, and such request is denied. And thereupon the court asked counsel for defendants if they desired to answer said petition further, and they stated that they relied upon the answers as filed and stricken out. Thereupon, on motion of complainants the said petition is taken for confessed. (Code 1919, section 6123.)" Whereupon the court entered the decree complained of against the treasurer and the appellants, the sureties upon the $250,000.00 bond, for the sum of $136,493.75, with interest thereon from January 1, 1928, until paid, for the use of the county and district school funds, as set out in the report of M. P. Farrier, special commissioner, filed November 18, 1927. It is of this decree that the appellants, the sureties, are here complaining.

1. The first assignment of error is thus stated: "The court erred in holding that the writing dated August 10, 1926, was a valid and legal bond and binding on petitioners, because said writing was made in violation of law and was contrary to public policy, as expressed by the statute."

It is contended that this $250,000.00 bond, upon which they are sureties, is void, "because said writing is in contravention of and contrary to statute, and in violation of public policy as enacted and declared by Code, section 2698."

In answer to this assignment, it is contended for appellees.

(a) That this bond was not in fact given under Code, section 2698, as amended by Acts 1926, chapter 537 (which section at the date of the execution of the bond directed that the county treasurer should give as surety on his bond some guaranty or security company doing business in the State of Virginia and deemed sufficient by the court, judge or clerk before whom he qualifies), but that it was given under section 2777, as amended, Acts 1926, page 26, chapter 14.

In Code, section 2777, as amended by Acts 1926, chapter 14, under which the appellees claim this bond was executed, this language appears: "Each circuit and corporation court shall enter an order at some spring and fall term in each year, requiring the commissioner of accounts * * * to examine the official bond of the treasurer of such county or city, except where the surety upon the said bond is such a surety company * * * and report to the said circuit * * court at its next term thereafter, whether the said bond is sufficient in all respects, * *. If the bond be reported insufficient, the court shall make an order requiring the treasurer, within thirty days * * to execute a new bond, which bond may be given before said court, or the judge thereof in vacation."

It is shown then that the last bond was given under this section (which inferentially recognizes the validity of some bonds without corporate surety), the com-

missioner of accounts, acting thereunder, having first reported that the $100,000.00 bond, with personal sureties, was insufficient in penalty. Thereupon, the court ordered, "pursuant to section 2777 of the Code of Virginia, that A. C. Stacy, treasurer, shall execute a new bond, conditioned as the law directs, in the penalty of $250,000.00." Then the order under which this last bond was executed reads: "Thereupon the said A. C. Stacy appeared in open court, pursuant to the above order, together with J. H. Stinson, Green Charles, Mrs. Alice Waldron, Harvey Charles, J. H. Dotson and John Lester, as sureties, who were examined on oath and approved by the court, entered into, executed and acknowledged a bond in the penalty of $250,000.00, payable and conditioned as the law directs."

The contention is then made that section 2698 does not apply to this particular bond, as claimed for appellant sureties, because that section only applies to bonds given at the time the treasurer qualifies, and requires a guaranty or security company doing business in Virginia as surety on such a bond. The emphasis is placed upon the language of section 2698, that such a surety is required of the treasurer "at the time he qualifies." It is argued therefrom that inasmuch as this bond was not given at the time Stacy qualified, section 2777, instead of section 2698, applies and that therefore a guaranty or security company was not necessary as surety on this bond. As we hereafter undertake to show, this is immaterial in this case.

(b) The second contention of appellants is that to accept personal sureties upon a treasurer's bond is in violation of the public policy as declared by the statute, and hence that the bond is void.

In reply to this contention, the appellees cite a

number of authorities which seem to be conclusive. Unquestionably the general rule is that statutory bonds of public officers are not invalid merely because the terms of the statute have not been strictly complied with, unless the statute expressly declares that the failure to comply with it in any particular shall render the bond invalid.

In *Gibson* v. *Beckham*, 16 Gratt. (57 Va.) 334, this is stated: "Bonds of sheriffs, clerks and other officers, of administrators, etc., are taken in the absence of those who may be most affected by the acts of such functionaries, and should be sustained unless clearly made invalid by law. Nor do I perceive how the surety, as has been argued, can occupy any higher ground than his principal. It is his intervention which has enabled the principal to act; and he should be bound to the extent of his obligation for him." *Chapman* v. *Commonwealth*, 25 Gratt. (66 Va.) 737; *Jackson* v. *Hopkins*, 92 Va. 601, 24 S. E. 234; *United States* v. *Linn*, 15 Pet. 315, 10 L. Ed. 751; Mechem on Public Officers, section 269.

The opinion in *Love* v. *McCoy*, 81 W. Va. 478, 94 S. E. 954, 955, L. R. A. 1918C, 833, states conclusive reasons for holding such bonds valid, unless the statute expressly declares them to be void. There a county sheriff had executed a bond for the faithful performance of his public duties, but the statute under which the bond was required was afterwards declared unconstitutional. In holding the bond valid, the court states: "While the failure of an act to stand the test of constitutionality does frequently render invalid a bond given pursuant to its requirements and relieve the obligors from the liability it would impose if the statute were not void, yet if there be some consideration underlying it independendent of the statute, or

there accrues to them some benefit, advantage or profit by its execution, they will be required to respond to the undertaking expressed in the instrument. It is not the policy of the law to permit escape from the legal consequences of the execution of such an instrument, if some one or more of the persons who bind themselves to perform its conditions receive and enjoy its fruits or the protection it affords, or derives some material or financial benefit from it. They will not in either such event, when summoned to account for such a breach of the conditions, be permitted to plead the voidness necessitating the execution of the undertaking."

The statute (section 2698) relied upon for the appellants does not expressly make the bond void in case of failure to observe it, and so the bond is valid. It has been frequently held in such cases that even if such obligations are voidable as statutory bonds, they are nevertheless valid and enforceable as common law obligations. This has been said so often that the courts should not treat it as a debatable question. It is only because it is so earnestly argued that we repeat some of the many expressions on this subject.

■■ The general rule, which is amply supported by reason and authority, is: If the bond required of a surety cannot be upheld as a statutory bond, it is at least good as a common law voluntary obligation.

In a note to *Estate of Ramsey* v. *People* (197 Ill. 572, 64 N. E. 549), 90 Am. St. Rep. 200, this comprehensive statement is made: "The rule is well settled that a bond given for the faithful performance of official duties, or in pursuance of some requirement of law, may be valid and binding upon the parties as a voluntary or common law obligation, when not made with the formalities or executed in the mode provided by the

statute under which it purports to have been given, and hence is not enforceable as a statutory bond, provided it is not in violation of law. This rule rests on the principle, that, notwithstanding the instrument may not conform with the special requirements of a statute or regulation in compliance with which the parties executed it, nevertheless it is a contract voluntarily entered into upon a sufficient consideration, for a purpose not contrary to law, and therefore is obligatory on the parties to it in like manner as any other contract or agreement at the common law; and on the further principle that the sureties, having by their act in executing the instrument enabled their principal to obtain the office, are estopped to deny their liability for his official acts: *Wilson* v. *Cantrell*, 19 Ala. 642; *Carter* v. *Fidelity, etc., Co.* [134 Ala. 369] 32 So. 632 [92 Am. St. Rep. 41]; *Pritchett* v. *People*, [1 Gilman] 6 Ill. 525; *Todd* v. *Cowell*, 14 Ill. 72; *Coons* v. *People*, 76 Ill. 383; *Scarborough* v. *Parker*, 53 Me. 252; *Archer* v. *State*, 74 Md. 443, 28 Am. St. Rep. 261, 22 Atl. 8; *Bank of Brighton* v. *Smith*, 5 Allen [Mass.] 413; *State* v. *O'Gorman*, 75 Mo. 370; *State* v. *McAlpin*, 26 N. C. 140; *State* v. *Perkins*, 32 N. C. 333; *Lowe* v. *Guthrie*, 4 Okl. 287, 44 Pac. 198; *Goodrum* v. *Carroll*, 2 Humph. (Tenn.) 490, 37 Am. Dec. 564; *Weston* v. *Sprague*, 54 Vt. 395; *United States* v. *Linn*, 15 Pet. 290 [10 L. Ed. 742]." Mechem on Public Officers, sections 271-2.

Our own court has frequently recognized this rule. *Gibson* v. *Beckham*, 16 Gratt. (57 Va.) 334; *Chapman* v. *Commonwealth*, 25 Gratt. (66 Va.) 721; *Jackson* v. *Hopkins*, 92 Va. 604, 24 S. E. 234.

 Whether the argument of appellants, to the effect that the bond should have been executed strictly in accordance with the statute, Code, section 2698

(as amended by Acts 1926, chapter 537), is true, or whether Code, section 2777 (as amended by Acts 1926, chapter 14), should be construed to permit the giving of personal rather than corporate surety on this bond, is entirely immaterial in this case. In any event, it is perfectly valid as an obligation to secure the faithful performance of the treasurer's official duties. *Kuhl* v. *Chamberlain*, 140 Ia. 546, 118 N. W. 776, 21 L. R. A. (N. S.) 766, note.

2. The second assignment of error is that the court erred in striking out the answer of petitioners to the petition of E. E. Smith, and in refusing to treat said answer as an amended and supplemental answer to the original bill.

The sufficient reply to this assignment is that this answer was not tendered, and the additional defense thereby interposed was not made until after the case had been pending for nearly a year (Code 1919, section 6122); and was not made until after the liability of the principal and his sureties had, under the issues theretofore raised by the pleadings, been already determined by the decree confirming the commissioner's report.

The new and additional defense is based upon the fact that after Commissioner Farrier's report had been confirmed without exception, Mr. Farrier, who is an able attorney and an accomplished accountant, was employed by the appellants to make what is called a supplemental report as commissioner. To designate it a supplemental report is a misnomer. It is a mere statement, or opinion, of Mr. Farrier, based upon information received by him, in some most important particulars, from Mr. Stacy, and should have no further effect in this case than that of an opinion based upon statements made to him. The purpose of this

supplemental investigation by Mr. Farrier was to endeavor to show that some of the liability of Stacy should be imposed upon the Maryland Casualty Company, the surety upon the original bond first executed by the treasurer.

The Maryland Casualty Company is not a party to this litigation, and if it be possible for a surety ever to establish conclusively that his obligation as surety has ceased, and that his principal has made a settlement, this record shows that there is no further obligation on the surety under the first bond. The only matter which could be admitted to attack such a formal settlement as that which is shown by the record to have been made by Stacy with the board of supervisors under that first bond, would be actual fraud or palpable mistake, and there is no suggestion of this in the record.

It is suggested that a part of Stacy's liability should be imposed upon the sureties on the second or $100,000.00 bond. For the purposes of this case, it is enough to say that with the exception of Hurley, the sureties on the two bonds are identical, and that Hurley, without contradiction, is shown to be insolvent. This therefore becomes immaterial, even had the settlements made under the second bond and also after the latest bond was executed proved to be either false or fraudulent.

The sufficient answer to the contention of appellants that they had the right, when the case was ready for a final decree, to reopen the pleadings and interpose new defenses, together with all the former defenses, is that they had previously had their day in court with an opportunity to be heard, fully and completely, and that no good cause was shown for reopening the pleadings at that stage of the litigation.

*National Mut. Building, etc., Asso.* v. *Ashworth,* 91 Va. 709, 22 S. E. 521; *Bowe* v. *Scott,* 113 Va. 502, 75 S. E. 123; *Crawn* v. *Commonwealth,* 84 Va. 282, 4 S. E. 721, 10 Am. St. Rep. 839, note 843; *U. S. Fid. & G. Co.* v. *Jordan,* 107 Va. 347, 58 S. E. 567.

■ 3. The third assignment of error states a valid. rule of law, which, however, is inapplicable under the facts shown by the record—that is, that the sureties on the latest bond are only liable for defaults which occurred after its execution.

■ In this connection, this clear statement from 22 R. C. L. page 516, section 203, is helpful: "The principle that where an officer holds for more than one term and furnishes different sets of sureties. for each term, the sureties on the bond given for the term when the defalcation occurs are alone responsible, is of special importance when there is no clear evidence as to whether a particular defalcation occurred during one or other of the successive terms of such officer. The rule has been laid down that where the officer fails to account for and pay over to his successor the funds chargeable to him as shown by his books and final. account, the sureties on the last bond are *prima. facie* liable therefor, and, to relieve themselves, they must show that the defalcation in fact occurred during a prior term. (*Bruce* v. *United States,* 17 How. 437, 15. L. Ed. 129; *Milford* v. *Morris,* 91 Ia. 198, 59 N. W. 274,51 Am. St. Rep. 338;*Pine County* v.*Willard,*39 Minn. 125, 39 N. W. 71, 12 Am. St. Rep. 622, 1 L. R. A. 118 and note; *Board of Education* v. *Robinson,* 81 Minn. 305, 84 N. W. 105, 83 Am. St. Rep. 374. Note: 23 L. R. A. (N. S.) 133.) Another way of stating this principle is to say that the presumption is that money which is shown to have come into the officer's hands and should have been there continues in his possession, and that.

the burden of proof is on the surety to show that the funds presumably in the hands of his principal have been misappropriated before he became liable on the bond. (*McMullen* v. *Winfield Bld'g, etc., Ass'n*, 64 Kan. 298, 67 Pac. 892, 91 Am. St. Rep. 236, 56 L. R. A. 924.) Where this rule has been applied it has been held that the fact of a conversion of funds during the first term is not conclusive as showing that such conversion was identical with a deficiency at the end of the second term in the absence of evidence of a continued conversion during the second term. (*Pine County* v. *Willard*, 39 Minn. 125, 39 N. W. 71, 12 Am. St. Rep. 622, 1 L. R. A. 118.) On the same principle a shortage shown to exist at a certain time will, in the absence of proof to the contrary, be presumed to have arisen on account of defalcations occurring during the term of office covering such period, and not to include shortages occurring in previous terms. (*Dickinson* v. *White*, 25 N. D. 523, 133 [143] N. W. 754, 49 L. R. A. (N. S.) 362.)"

The presumption here is that the defalcation occurred during the three years and five months from July 30, 1924, to January 1, 1928, the period for which these appellants are liable as sureties, and there is no evidence to the contrary.

Perhaps it is too much, in the present development of human character, to expect a defaulting treasurer and his sureties to recognize any ethical duty to face their obligation. Those who strive to evade their legal obligations are many, while those who swear to their own hurt and change not are few. Our laws generally mark the limit of our morals, and that which the law permits our consciences generally allow. We cannot refrain from saying that in this most extreme case of the flagrant and persistent defalcation of an official

entrusted with the public funds, advantage has been taken of every opportunity to delay any settlement whatever, either partial or complete. Meanwhile the county of Buchanan has been deprived of the funds contributed by the taxpayers as necessary for the conduct of the public business. The treasurer's term ended January 1, 1928, the bill was filed while he was still in office; and was answered August 1, 1927; Commissioner Farrier's report was filed in November, confirmed in December without objection, but five months later, in April, 1928, the attempt was made to reopen all of the issues in the case, basing the defense on lack of sufficient information to put the appellants on inquiry as to facts which were notorious in the community and well known to all who read Virginia newspapers. Thereafter, the statute allowing six months in which to apply for an appeal was taken advantage of, and the petition for appeal was not presented until four days before the expiration of the time allowed. That as to some of these delays they were within their legal rights may be true, but that they have too long delayed the payment of a just obligation is manifest.

We are confident that no injustice can possibly be done to these sureties by affirming this decree, for even had they been able to show that any portion of the recovery against them as sureties of the treasurer should have been deducted because of their belated claim that a portion of the defalcation may have occurred before the bonds on which they were sureties were executed, it is perfectly apparent that there is nevertheless quite a large liability which clearly arises under the two bonds on which they are the sureties; so that if under the processes of law they should now be permitted still further to delay a settlement, the penalties recoverable under Code 1919, sections 2787

and 2789, should certainly be imposed upon them. This would result in a recovery certainly as great and probably greater than that imposed by the decree of which they complain.

There is a cross-assignment of error to the effect that we should in this case impose the extreme penalty authorized by statute—that is, ten per centum a month from January 1, 1928, to the date of the decree. *Powers* v. *Hamilton*, 117 Va. 810, 86 S. E. 98; *Clevinger* v. *County School Board*, 139 Va. 449, 124 S. E. 440. It may be that this case is one in which this penalty should be imposed, but upon consideration of the whole case we are of opinion to leave the decree as it is, and to affirm it without modification.

*Affirmed.*