WEST BERGEN TRUST COMPANY, as substituted guardian of Frank McTavey, Joseph R. Sokol, Charles Trevor and James G. Bradley, incompetents, complainant,

*v.*

UNITED STATES FIDELITY AND GUARANTY COMPANY, and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, et al., defendants.

[Decided April 16th, 1940.]

*Messrs. McDermott, Enright & Carpenter,* for the defendant United States Fidelity and Guaranty Company.

*Messrs. Stickel & Stickel,* for the defendant Fidelity and Deposit Company of Maryland.

EGAN, V. C.

On March 28th, 1926, the judges of the Hudson County Orphans Court appointed James F. Ryan, now deceased, public guardian of incompetent veterans for the county of Hudson, pursuant to chapter 130 of the laws of 1924. The term was for five years and until his successor be appointed and qualified. He was directed to provide a bond to the Ordinary of the state in the sum of $25,000. Such bond was executed and filed by the defendant United States Fidelity and Guaranty Company.

Paragraph 3 of the act of 1924 provided that in all cases where applications were made to the Orphans Court in counties of the first class for the appointment of a guardian for any incompetent veteran, and the next of kin should be unwilling, unable or not qualified for such appointment, the said public guardian should be appointed as his guardian.

The said act provided that such guardian should have all the power and authority of guardians of other incompetent persons; and he was required to proceed to settle the accounts of all estates in his hands, notwithstanding his tenure of office should have expired.

The act directed that in January of each year, he should present to the judges of the Orphans Court a report of his receipts and disbursements in each guardianship estate; and upon the termination of any such guardianship, by death or otherwise, he should proceed to settle his accounts in the manner prescribed by law in the case of other guardians of incompetent persons. Upon filing his annual report, and upon its approval, the judges of the Orphans Court determined the amount of his fees, which were not to be in excess of five per cent. of the amount passing through his hands.

The 1924 act was amended on April 3d, 1928, by chapter 168, laws of 1928. The amended act applied to all counties in the state; the 1924 act applied only to first class counties.

Under the 1928 act, the Orphans Court could appoint the public guardian to act as guardian for an incompetent veteran in any case where the next of kin were unwilling, unable or not qualified to accept such appointment. The act directed that in January of each year the guardian should present to the judges of the Orphans Court his account in each estate, with receipts and vouchers. It provided he receive a salary to be fixed by the board of chosen freeholders of the county, which was to be paid semi-monthly. His salary was to be in lieu of all other charges, compensations and commissions. The act further provided that it should be the duty of the public guardian of incompetent veterans to assist, supervise, guide and otherwise aid such persons as had been, or thereafter should be, appointed guardians of incompetent veterans, and should give such assistance in drawing and preparing all papers and documents as were necessary, and to assist any guardian of any incompetent veteran to the end that the incompetent veteran be fully and completely protected. The 1928 act repealed all inconsistent acts.

Pursuant to the provisions of the 1928 act, the judges of the Orphans Court of Hudson county, on July 26th, 1928, appointed Ryan public guardian, aforesaid, for Hudson county, for a term of five years. He was directed to furnish a bond in the sum of $25,000. He furnished a bond in that amount on the day last mentioned. The defendant Fidelity and Deposit Company of Maryland became surety on the bond.

There were three guardianships to which Ryan was appointed by the Orphans Court of Hudson county, namely: On December 3d, 1926, as guardian of the estate of Joseph R. Sokol; on March 12th, 1927, as guardian of the estate of Frank McTavey; on March 12th, 1927, as guardian of the estate of Charles Trevor. In each of these guardianship estates he furnished separate bonds. As guardian of Sokol, he was required to furnish a bond of $1,500; as guardian of

McTavey, he was required to give a bond with sureties, but in the order of appointment the amount of the bond was, presumably, inadvertently omitted; in the Trevor estate, he was required to furnish a bond of $3,000. He did not furnish bonds in the sums the court directed in these particular estates. However, he, with the defendant Fidelity and Deposit Company, as surety, in the estate of Charles Trevor, executed the following bonds: On June 16th, 1928, the sum of $2,000; on November 1st, 1928, the sum of $1,000; on June 23d, 1930, in the sum of $10,000.

On June 23d, 1930, Ryan, with the Fidelity and Deposit Company, as surety, executed a bond in the sum of $20,000 in the McTavey guardianship estate.

On June 23d, 1930, he executed a bond for $1,000 with the defendant Fidelity and Deposit Company, as surety, in the Sokol guardianship estate.

On June 23d, 1933, the judges of the Orphans Court of Hudson county reappointed Ryan as public guardian of incompetent veterans for another term of five years and directed that he provide a $25,000 bond. He gave a bond in that sum, executed by him and the defendant Fidelity and Deposit Company as surety.

On February 15th, 1936, Ryan died intestate. Frances R. Gini was appointed by the surrogate of Hudson county, administratrix of his estate.

The complainant, West Bergen Trust Company, was named to fill the guardianship vacancies created by Ryan's death. It qualified as substituted guardian of Frank McTavey, Joseph R. Sokol and Charles Trevor.

In the Trevor estate Ryan filed an account covering the period June 1st, 1927, to December 31st, 1928, which was allowed. The decree of allowance was signed on June 21st, 1929, by Judge Brown of the Hudson County Orphans Court; it shows a balance in Ryan's hands, as of December 31st, 1928, of $392.30. In the same estate Ryan filed an intermediate account covering the period January 1st, 1929, to June 15th, 1932. This account was also allowed by Judge Brown of the Hudson County Orphans Court on July 14th, 1932. The decree, in part, reads as follows:

"It is on this fourteenth day of July, the term of April A. D. nineteen hundred and thirty-two by the said Court found and certified that the articles of said account are supported and justified by the vouchers and that there is a balance remaining in the hands of said Guardian amounting to the sum of Four Thousand, Eight Hundred and Seventy-Three Dollars and seventy ($4,873.70) cents to be disposed of according to law.—It is further ordered that the said account and this certificate be entered of record by the Clerk of this Court in the books provided for that purpose according to law; and that this account may be allowed."

Ryan filed a second intermediate account in this same estate covering the period June 15th, 1932, to June 12th, 1934, which was allowed by Judge Erwin of the Hudson County Orphans Court on August 2d, 1934. The decretal part of the order of allowance reads as follows:

"It is on this second day of August, the term of April A. D. nineteen hundred and thirty-four, by the said Court found and certified that the articles of said account are supported and justified by vouchers and that there is a balance remaining in the hands of said Guardian amounting to the sum of Three Thousand and Sixty-four Dollars and fifteen ($3,064.15) cents to be disposed of according to law.—It is further ordered that the said account and this certificate be entered of record by the Clerk of this Court in the books provided for that purpose according to law; that this account may be allowed."

Frances R. Gini, administratrix of Ryan's estate, filed in this (Trevor) estate, a final account covering the period June 13th, 1934, to February 21st, 1936; and on May 29th, 1936, Judge Erwin, aforesaid, directed her, as administratrix, to turn over to the complainant, West Bergen Trust Company, the substituted guardian of Trevor, the sum of $3,708.75, together with interest at the rate of three per cent. from October 8th, 1933, to February 15th, 1936, amounting to $287.25; making a total of $3,996.

In the guardianship estate of Sokol, Ryan filed his first account which covered the period December 1st, 1926, to

December 31st, 1928. It showed no balance. The account was approved by decree of Judge Brown, aforesaid, dated June 21st, 1929. Ryan, in this same estate, filed an intermediate account as guardian covering the period January 1st, 1929, to June 15th, 1932. This account was approved by decree signed by Judge Brown, aforesaid, dated July 14th, 1932; it showed a balance of $814.73. The decree reads as follows:

"It is on this fourteenth day of July, the term of April A. D. nineteen hundred and thirty-two by the said Court found and certified that the articles of said account are supported and justified by the vouchers and that there is a balance remaining in the hands of said guardian amounting to the sum of Eight Hundred and Fourteen Dollars and seventy-three ($814.73) cents to be disposed of according to law.—It is further ordered that the said account and this certificate be entered of record by the Clerk of this Court in the books provided for that purpose according to law; and that this account may be allowed."

Mrs. Gini, as administratrix, filed a final account in the Sokol guardianship estate covering the period June 16th, 1932, to February 15th, 1936. On May 29th, 1936, Judge Erwin, aforesaid, signed a decree directing Mrs. Gini, as administratrix, to turn over to the complainant, West Bergen Trust Company, substituted guardian of Sokol, the sum of $1,455.46.

In the McTavey guardianship estate, Ryan filed a first account covering the period June, 1927, to December 31st, 1928. On June 21st, 1929, Judge Brown, aforesaid, signed a decree. The decree reads as follows:

"It is on this twenty-first day of June the term of April A. D. Nineteen hundred and twenty-nine by the said Court found and certified that the articles of said account are supported and justified by the vouchers and that there is a balance remaining in the hands of said Guardian amounting to the sum of Fourteen Hundred and Twenty-Two Dollars and eleven ($1,422.11) cents—cash balance to be disposed of according to law.—It is further ordered that the said account and this certificate be entered of record by the Clerk of this

Court in the books provided for that purpose according to law. Guardian prays that this account may be allowed."

Ryan, in this same estate, filed an intermediate account covering the period January 1st, 1929, to June 10th, 1932; it was approved by Judge Brown, aforesaid, on July 14th, 1932. The decree reads as follows:

"It is on this fourteenth day of July the term of April A. D. nineteen hundred and thirty-two by the said Court found and certified that the articles of said account are supported and justified by the vouchers and that there is a balance remaining in the hands of said Guardian amounting to the sum of Thirteen Thousand and Eighty-Five Dollars and seventy ($13,085.70) cents, to be disposed of according to law.—It is further ordered that the said account and this certificate be entered of record by the Clerk of this Court in the books provided for that purpose according to law; and that this account may be allowed."

Mrs. Gini, as administratrix, in this (McTavey) estate, filed a final account covering the period June 11th, 1932, to February 28th, 1936. The Orphans Court of Hudson county directed her, as administratrix, to turn over to the complainant, West Bergen Trust Company, substituted guardian of McTavey, the sum of $14,464.14, with interest at three per cent. from June 11th, 1932, to February 15th, 1936, amounting to $1,044.32, or a total of $15,508.46.

On November 15th, 1929, Ryan was appointed the guardian of James G. Bradley. He was directed to furnish a bond of $2,000. He provided such bond, executed by him and the defendant Fidelity and Deposit Company, as surety.

The complainant, West Bergen Trust Company, after Ryan's death, was duly appointed and qualified as substituted guardian of James G. Bradley.

After Ryan's death, a shortage was discovered in his accounts in each of the four aforesaid guardianship estates. The following is a schedule of the amounts of the decrees of the Orphans Court, with the credits allowed, and the shortages in each estate:

| | | |
|---|---|---|
| Frank McTavey decree | $15,508.46 | |
| Credit | 1,556.64 | |
| Balance due from Ryan | | $13,951.82 |
| Joseph R. Sokol decree | $1,455.46 | |
| Credit | 640.46 | |
| Balance due from Ryan | | 815.00 |
| Charles Trevor decree | $3,996.00 | |
| Credit | 708.75 | |
| Balance due from Ryan | | 3,287.25 |
| James G. Bradley decree | $3,538.15 | |
| Credit | 241.84 | |
| Balance due from Ryan | | 3,296.31 |
| | | $21,350.38 |

Plus interest thereon from May 29th, 1936.

The defendant Fidelity and Deposit Company of Maryland made an offer to the complainant to pay the sum of $21,350.38 in full settlement of all claims against the defendants involved in this suit, retaining the right to charge liability, and to institute an action therefor against the defendant United States Fidelity and Guaranty Company upon the bond of $25,000 executed and filed by it as surety for Ryan in March, 1926. This court, by order dated July 18th, 1938, authorized the acceptance of said offer of settlement of $21,350.38, and that amount was thereafter paid by the defendant Fidelity and Deposit Company to the complainant.

The Fidelity and Deposit Company's payment to the complainant results in this proceeding. The defendants now seek to ascertain the extent of their respective liability as sureties aforesaid.

The United States Fidelity and Guaranty Company contends that the aforesaid decrees of the Orphans Court established that the losses in the four guardianship estates occurred after the Fidelity and Deposit Company's separate, or special, guardianship estate bonds were executed and filed.

In the Trevor guardianship, the decrees of the Orphans Court of June 21st, 1929, July 14th, 1932, and August 2d, 1934, approved Ryan's accounts as to charge and discharge.

In the Sokol guardianship, Ryan's account of June 21st, 1929, showed no balance in his hands. He filed an intermediate account which Judge Brown of the Hudson County Orphans Court, on July 14th, 1932, allowed as to charge and discharge. It showed a balance in Ryan's hands of $814.73. In this case, the Fidelity and Deposit Company's separate, or special, guardianship bond is dated June 23d, 1930. The United States Fidelity and Guaranty Company claim its liability terminated in 1928 when Ryan was reappointed, and that all moneys, in the Sokol guardianship, came to Ryan after June 21st, 1929. It says, that in consequence, the liability for the said sum of approximately $815 is chargeable to the Fidelity and Deposit Company.

In the McTavey guardianship, the decree signed by Judge Brown of the Hudson County Orphans Court under date of June 21st, 1929, approved Ryan's first account which showed a balance of $1,422.11. The bond of $20,000 written June 23d, 1930, by the defendant Fidelity and Deposit Company mentioned the appointment of Ryan as guardian March 12th, 1927. On July 14th, 1932, the decree of Judge Brown of the Hudson County Orphans Court showed that Ryan had in his hands at that time a balance of $13,085.70. Subsequently, an examination showed that there was a shortage of $13,951.82, as of May 29th, 1936. The United States Fidelity and Guaranty Company contends that the records indicate that the McTavey bond was written in 1930, which was after Ryan's term had ended under his 1926 appointment.

The United States Fidelity and Guaranty Company say that the Hudson County Orphans Court could have compelled Ryan, as public guardian, to account when the legislature repealed the 1924 act under which he was first appointed as public guardian, but it did not do so. It also declares that there is no evidence in this case showing that any of the items of loss occurred prior to April 3d, 1928, when the legislature repealed the 1924 act under which Ryan had been first appointed as public guardian. The facts herein appear to sustain that contention.

The defendant Fidelity and Deposit Company in its brief says: "Both sides agree that when James F. Ryan was

appointed public guardian under the act of 1928, a new office was created and a new official personality and that even if it could be said that James F. Ryan was succeeding himself when thus appointed nevertheless, there was a new office and new official. Both sides agree that the legal effect of the situation is just as though a different individual than James F. Ryan had been appointed public guardian under the act of 1928." It contends that while the 1928 act abolished the office of public guardian as established under the act of 1924, it holds that Ryan's office under the original act did not become vacant until July 26th, 1928, when the judges of the Orphans Court of Hudson county again appointed him public guardian under the act of 1928; and further, that the office was "not abolished as to guardianships already taken over by the old public guardian. The abolition only related to the inability to take over further guardianships." The Fidelity and Deposit Company further contends that "as to those cases where as such official he had already been appointed, he continued on, as did his surety, until by proper court procedure and payment such officer had fully discharged and performed his duty as guardian of the estates entrusted to his care. This neither he nor his surety ever did."

Where an officer succeeds himself in office, the terms of office are separate and distinct; there is a new oath, a new office and a new official. *United States* v. *Eckford's Executors, 1 How. 250; 11 L. Ed. 212.* In *Aetna Casualty and Surety Co.* v. *Board of Supervisors (Va.), 168 S. E. Rep. 617,* the Supreme Court of Appeals held (at *p. 634*):

"Where all that appears is that at the time in question he is indebted to the county and there is no evidence to show when his defalcation or default originally occurred, it will be presumed that it occurred during his last term of office. *Stinson* v. *Board of Supervisors, 153 Va. 362; 149 S. E. Rep. 531.*"

In *State* v. *Edwards, 89 S. C. 224; 71 S. E. Rep. 826,* the court held (at *p. 827*):

"The court correctly charged 'when an officer has held his office for two or more successive terms, and suit is brought on the last bond, it will be presumed that the default occurred

during the last term, unless the sureties can prove that the principal had been guilty of a defalcation prior to the execution of the bond sued on.' The presumption is that, when the new bond was given and the new term of office entered upon, the officer had in his hands all the money which he ought to have had at the beginning of the term covered by the new bond."

However, it does not appear that the shortages in the aforesaid guardianship estates resulted during Ryan's first term as public guardian under the 1924 act, when the United States Fidelity and Guaranty Company furnished the general bond of $25,000. The decrees of the Orphans Court present the inference that the losses in the three or four guardianship estates, occurred after all the Fidelity and Deposit Company's separate, or special, bonds were given. The decrees of the court recite the financial balances remaining in the hands of the public guardian in the several estates, and are findings of fact. That, in my opinion, is *prima facie* evidence that Ryan's accounts were correct when approved. No proof was submitted to rebut that inference. In *Davis* v. *Combs, 38 N. J. Eq. 473,* Chancellor Runyon, as Ordinary, said:

"The charges in the accounts are definite and plain, and it is to be assumed, under the provisions of the section just considered, that, in the absence of proof to the contrary, the moneys were paid as and for the purposes stated. There has been no concealment on the part of the guardian. The frequency and particularity with which he accounted is some evidence, at least, of good faith on his part in the management of the estate." (At *p. 481.*)

The section of the statute which the Chancellor was considering is the same as that now appearing in *R. S. 3:10-14,* which reads:

"A guardian's intermediate account shall, after being audited and stated by the register or surrogate and reported to the ordinary or orphans court, and after notice given to, or citation duly served on, interested parties, be examined by the court. If the court finds the account properly and fairly stated and the articles thereof supported and justified by the vouchers, the account shall be passed.

"If any article of such account be at any time afterwards excepted to by the ward or his representative or other party interested, he

must prove or show the falsity or injustice thereof unless notice on his behalf shall have been given at the time of passing the account, that such article would be excepted to and a memorandum of that notice shall have been entered of record or entry thereof requested."

The duties of a public guardian, when acting in a specific case, are the same as a guardian appointed in any other case. He has no special claims, rights, or privileges, which a guardian in any other case does not possess. His appointment results from the existence of certain circumstances mentioned in the 1924 and 1928 acts aforesaid.

The fact that the Orphans Court required Ryan as public guardian, to furnish a general bond of $25,000 at the time of his appointment, did not relieve him from the necessity or obligation of supplying a separate, or special, bond in each individual case in which he was subsequently appointed. In the cases above mentioned, in which Ryan was appointed as guardian, he was ordered to provide separate, or special, bonds in each individual case. He provided them.

There is no doubt in my mind that when liability for defalcation of a public guardian appointed under the 1924 and 1928 acts, is established, and he has furnished both general and special bonds, as in the instant case, the separate, or special, bond should in the first instance satisfy the loss; and if the principal of such bond be not sufficient to fully satisfy, then resort may be had to the public guardian's general, or official, bond. The separate, or special, guardianship bonds are primarily liable. Liability does not attach to the public guardian's general, or official, bond unless and until the special, or separate, guardianship bonds fail to satisfy the deficiency.

In *Milwaukee* v. *Ehlers, 45 Wis. 281,* the court (at *p. 293*), said:

"* * * The general rule is, that where an officer is required to perform a duty which is special in its nature, and he is required to give a special bond for the faithful performance of such duty, in the absence of any declaration that the general bondsmen shall also be liable, no such liability attaches."

The principles of the above case have been cited with approval in the following cases: *Morrow* v. *Wood, 56 Ala. 1;*

240

*Briggs* v. *Manning, 80 Ark. 304; 97 S. W. Rep. 289; Anderson* v. *Thompson (Ky.), 10 Bush. 132; Redwood County* v. *Tower, 28 Minn. 45; 8 N. W. Rep. 907; State* v. *Felton, 59 Miss. 402; State, Use of Maries Co.* v. *Johnson, 55 Mo. 90; Crumpler* v. *Governor, 12 N. C. 52; Broad* v. *Paris, 66 Tex. 119; 18 S. W. Rep. 342; Board of Education* v. *Roder, 42 W. Va. 178; 24 S. E. Rep. 680; Milwaukee County* v. *Pabst, 70 Wis. 352; 35 N. W. Rep. 337.*

Under all the circumstances, I feel that the allegations of the counter-claim of the Fidelity and Deposit Company against the United States Fidelity and Guaranty Company have not been sustained and, therefore, it should be dismissed.