## Richmond

## COMMONWEALTH V. P. LORILLARD COMPANY, INC.

### January 20, 1921.

1. JURISDICTION.—*Want of Jurisdiction—Consent, or Waiver.*—Where a court has no jurisdiction of the question submitted to it, its judgment is void. The legislature alone can fix the classes of cases of which the courts of the Commonwealth are to take jurisdiction, and no consent or waiver of the parties can in any way confer a jurisdiction not so fixed.

2. JURISDICTION.—*Time and Place of Making Objection.*—Objection for want of jurisdiction of the question at issue may be made anywhere, or in any way, and at any time, and the Supreme Court of Appeals will, of its own motion, take judicial notice of the lack of such jurisdiction of the trial court.

3. TAXATION.—*Relief Against Erroneous Taxation—Code of 1919, section 2385—Liberal Construction.*—The object of section 2385, Code of 1919, providing for the relief of persons erroneously assessed with taxes is to give speedy and inexpensive relief against taxes erroneously assessed, and, being remedial in its character, it will be liberally construed in order to further the remedy provided by the legislature.

4. TAXATION.—*Income Taxes—Sec. 2385, Code of 1919.*—A tax on income is embraced in the language "taxes on land or other property," as used in Code of 1919, section 2385, providing that the persons assessed with "taxes on land or other property" and aggrieved by such assessment, may apply for relief to the court in which the commissioner gave bond and qualified.

5. TAXATION.—*Income Taxes—Business Done Without the State.*—The State of Virginia cannot impose an income tax on the income of a corporation derived from business done outside of the State, as that would deprive the corporation of the exemption afforded by Acts 1916, ch. 495, p. 830, to Virginia corporations which do no part of their business within the State.

6. TAXATION.—*Power of the Legislature.*—The legislature has the sole power of determining what machinery shall be exercised in carrying out the provisions of a law authorizing the imposition of taxes.

7. TAXATION.—*Construction in Favor of Taxpayer.*—Statutes imposing taxes are construed most strongly in favor of the tax-

payer, and will not be extended by implication to the prejudice of the taxpayer beyond the clear import of the language used.

8. TAXATION.—*Authority of Tax Officers—Power of the Legislature —Assessment.*—Taxes are imposed by the State in the exercise of its sovereign power. This power is exerted through the legislature, and an executive officer who seeks to enforce a tax must always be able to put his finger upon the statute which confers such authority. Taxes can only be assessed, levied and collected in the manner prescribed by express statutory authority. Tax assessors have no power to make an assessment except in the manner prescribed by law, and if the statute prescribes a method of assessment which is invalid, the assessor has no power or authority to adopt a method of his own which would have been legal if it had been prescribed by the legislature.

9. TAXATION.—*Income Taxes—Business Without the State—Case at Bar.*—In the instant case, complainant, a foreign corporation doing business in Virginia, was assessed on its income under Acts 1916, ch. 472, p. 794. It did not appear how much of the income was derived from business done in Virginia, nor did the statute provide any method by which that fact could be ascertained, but the administrative officers seeing that they could not enforce the provisions of the statute as to income derived from business done outside of the State, and the statute being silent on the subject, undertook to devise a scheme of their own by which to determine how much of the total income of the corporation was derived from business done in this State.

*Held:* That the statute conferred no such authority upon the officers, and they had no such power. The legislature could exercise this power, and having failed to do so, no such apportionment could be made. The trial court was right in holding that there was no law in this State under which the income tax sought to be assessed could be collected on so much of the income as was derived solely from business done in this State. The legislature seems to have recognized this situation, for at its next session it removed the difficulty. See Acts 1918, p. 395.

Error to a judgment of the Hustings Court of the City of Richmond, on an application to correct an erroneous assessment. Judgment for plaintiff. Commonwealth assigns error.

*Affirmed.*

The opinion states the case.

*Jno. R. Saunders, Attorney-General, J. Vaughan Gary,* and *E. Warren Wall,* for the Commonwealth.

*McGuire, Riely & Eggleston,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

The examiner of records for the city of Richmond assessed the P. Lorillard Company, Inc., with $2,000, income tax for 1916, on income received during the year 1915, and $5,000 income tax for 1917, on income received during the year 1916, and reported it to the commissioner of the revenue, who entered the same on his books. The company feeling aggrieved thereby, applied to the hustings court of the city of Richmond for relief. The application was made on June 17, 1918, under section 567 of the Code of 1887, as amended (Code 1919, sec. 2385). The hustings court granted the relief prayed for, and to its judgment a writ of error was awarded.

[1, 2] The first error assigned is that the hustings court had no jurisdiction of the question submitted to it. If this be true, its judgment is void. The legislature alone can fix the classes of cases of which the courts of the Commonwealth are to take jurisdiction, and no consent or waiver of the parties can in any way confer a jurisdiction not so fixed. Objection for the want of such jurisdiction may be made anywhere, or in any way, and at any time, and this court will, of its own motion, take judicial notice of the lack of such jurisdiction of the trial court.

[3] The object of the statute relied on is to give speedy and inexpensive relief against taxes erroneously assessed, and, being remedial in its character, it will be liberally construed in order to further the remedy provided by the leg-

islature. *Com'th* v. *Smallwood Memorial Institute,* 124 Va. 144, 97 S. E. 805.

The statute invoked is as follows: "Any person assessed with taxes on lands or other property, aggrieved by any such assessment, may, unless otherwise specifically provided by law, within two years from the first day of September of the year in which such assessment is made, and any person assessed with a license tax, aggrieved thereby, may, within one year after such assessment, apply for relief to the court in which the commissioner gave bond and qualified, * * *"

[4] It is earnestly insisted by counsel for the Commonwealth that a tax on income is not embraced in the language of the statute, "taxes on land or *other property.*" The meaning of words is frequently, if not generally, to be determined from the connection in which they are used. The word "property" is very comprehensive in its significance, and has often been construed, but we are not concerned with its meaning in the abstract or apart from its setting in the present case. Many definitions will be found in Words and Phrases, first and second series. We wish to confine ourselves to the meaning of the word as used in the statute under consideration.

The Code, from which the section is taken, is divided into titles, chapters and sections; these terms being used in the descending grade. The title is "Public Revenue," under which there are embraced nine chapters. The first of these chapters relates to "Assessments of lands and lots, and their subsequent re-assessment." The second chapter under that title relates to "Assessment of taxes on persons and property; licenses, how procured; certain acts imposing taxes continued in force." None of the remaining chapters under this title affect the questions in controversy. In the chapter last mentioned is contained the section in controversy. This chapter also contains the provisions with

respect to "forms of land and property books," and many other things relating to the assessment of taxes. Prior to the year 1916, the commissioners of the revenue had but two books, known respectively as the land book and the personal property book. On the first there were listed all lands and lots, and on the second all personal property of every kind, tangible and intangible, including incomes. It would seem, therefore, that the legislature had divided all property upon which the commissioners of the revenue were to extend the tax into two kinds, (1) Lands and lots, and (2) personal property, and that it intended to embrace "income" in the latter class, as it was placed on that book. As the commissioner had but two books on which to extend the taxes, and "income" was not "land and lots," there was nowhere else to place it except on the personal property book. This view is strengthened by the fact that in 1916, the legislature passed an act, "To prevent undue publicity of income tax returns," in which it provided that, "In entering income tax returns for the year 1916 and every subsequent year, the commissioner of the revenue shall not use for such entry the property book, or any other public record book, but shall use a special book," to be kept under lock and key, and not open to public inspection. Acts 1916, p. 949. The same legislature of 1916, by another act (Acts 1916, p. 413), required the local board of review to review the fiduciary and other reports of the examiner of records, and report to the commissioner of revenue the values ascertained on intangible personal property, money and incomes, and thereupon the commissioners of the revenue were required "to extend upon their personal property or other tax books" the taxes thereon required by law. Taxpayers were allowed by the act to apply to the local board of review for correction of the assessments, but it is expressly provided that "nothing contained in this section, however, shall prevent a taxpayer from applying directly to the court for the

correction of the erroneous assessment of his taxes and levies, without first applying to the local board of review."

It would seem from these statutes, read together, as they should be, that the legislature intended to divide all taxes which were extended on the books of the commissioners of the revenue into but two classes, one real estate and the other personal property, and to include income in the latter, and that the application to the court permitted by the statute last mentioned had reference to section 567, Code, 1904, as we have been unable to find any other statute under which the application could have been made.

What we have said above is to be restricted entirely to an interpretation of the statute, and not be otherwise extended.

The next assignment of error is to the action of the trial court in "granting relief in the absence of any evidence that the assessment complained of was erroneous or illegal." The holding of the trial court was that the assessment was illegal because there was "no law of this Commonwealth which authorized, clearly and specifically, the assessment by this State of such a tax as is complained of in this proceeding."

[5] The statute under which the income tax in the case at bar was imposed is the act of March 22, 1916. Acts 1916, ch. 472, p. 794. It provides that "The classification under schedule D providing for the taxation of income shall be as follows, to-wit: The aggregate amount of income of each person or corporation, whether received or due but not received within the year next preceding the first of January in each year, subject to the deductions and exemptions herein below recited." The statute then declares that "Income shall include" all rents, salaries, etc.; all interest upon notes, bonds or other evidences of debt of every description, excepting only bonds of this State and the United States; all royalties; all annuities; all profits from earn-

ings of any partnership or business done in or out of Virginia; and, in addition to certain other things, *all other gains and profits derived from any source whatever.* The statute permits certain deductions to be made from the income thus defined, for repairs, expenses, losses and worthless debts, which are immaterial to the present inquiry. After defining income as above, the statute declares, "on income, as defined in this schedule, the tax shall be one per centum." The statute applies to income derived "from any source whatever." It embraces all income, including that from business in or out of this State, and makes no provision for the manner of ascertaining the proportion of the income derived from sources outside of the State. At the same session of the legislature, an act was passed exempting from income tax and other taxes corporations organized under the laws of this State but which do no part of their business within this State. Acts 1916, ch. 495, p. 830. Construing the two acts together, the Supreme Court of the United States held that a Virginia corporation doing business within and without the State could not be taxed on so much of its income as was earned outside of the State, as that would deprive the corporation of the exemption afforded by the last mentioned statute to Virginia corporations which did no part of their business within the State. *F. S. Royster Guano Co.* v. *Commonwealth,* 253 U. S. 412, 40 Sup. Ct. 560, 64 L. Ed. 989. In that case the income derived from business done wholly within this State was kept separate, and no question was raised by the taxpayer as to liability for that portion of the income tax.

The plaintiff in error is a foreign corporation doing business in Virginia, and a number of other States, and also in foreign countries. It pays a license tax here for doing business in this State, and also a property tax on its property located in this State. It has its principal office in the State of New Jersey, where it was incorporated, and de-

rives its income from business done in all the States of the Union and in foreign countries. It would seem plain that the State of Virginia cannot impose an income tax on in-come derived from business done outside of the State, and this was practically conceded on the argument; but counsel for the State seems to think that the difficulty can be avoided, and the statute be upheld, by allowing the administrative officers to adopt their own methods of ascertaining what amount of income was derived from business done in Virginia, and extending the tax thereon at the rate fixed by the statute. This would be legislation and not administration. Administrative officers have no such power.

"The assessment being so important, the statutory provisions respecting its preparation and contents ought to be observed with particularity. They are prescribed in order to secure equality and uniformity in the contributions which are demanded for the public service, and if officers, instead of observing them, may substitute a discretion of their own, the most important security which has been devised for the protection of the citizen in tax cases might be rendered valueless." Cooley on Taxation (3d ed.), 598-9.

[6] The legislature has the sole power of determining what machinery shall be exercised in carrying out the provisions of a law authorizing the imposition of taxes. *Board of Education* v. *Kingfisher*, 5 Okla. 82, 89, 48 Pac. 103.

[7, 8] In *Supervisors* v. *Tallant*, 96 Va. 723, 32 S. E. 479, we held that property can only be taxed in the mode prescribed by law, and that the Constitution imposes upon the legislature the duty of passing such laws as are necessary to carry into effect its provisions relating to taxation, and unless it does so the tax cannot be collected; and in *Marye* v. *Diggs*, 98 Va. 752, 37 S. E. 315, 51 L. R. A. 902, that taxes can only be assessed, levied and collected in the mode pointed out by express statutory enactment. Statutes imposing taxes are construed most strongly in favor of the

11

taxpayer, and will not be extended by implication to the prejudice of the taxpayer beyond the clear import of the language used.

Taxes are imposed by the State in the exercise of its sovereign power. This power is exerted through the legislature, and an executive officer who seeks to enforce a tax must always be able to put his finger upon the statute which confers such authority. Taxes can only be assessed, levied and collected in the manner prescribed by express statutory authority. Tax assessors have no power to make an assessment except in the manner prescribed by law, and if the statute prescribes a method of assessment which is invalid, the assessor has no power or authority to adopt a method of his own which would have been legal if it had been prescribed by the legislature.

In *Allen* v. *Pullman's Palace Car Co.,* 191 U. S. 171, 180, 24 Sup. Ct. 39, 41 (48 L. Ed. 134), the Supreme Court, in speaking of a statute of Tennessee, which affected interstate commerce, said: "We are not at liberty to read into the statute terms not found therein, or necessarily implied, with a view to limiting the tax to local business which the legislature in the terms of the act impose upon the entire business of the company." The same remarks may be applied to the statute under consideration.

In *Meyer, Auditor of State of Oklahoma* v. *Wells, Fargo & Co.,* 223 U. S. 298, 32 Sup. Ct. 218, 56 L. Ed. 445, the following paragraphs of the syllabus are fully sustained by the opinion:

"In estimating for taxation the proportion of income of a corporation doing interstate business, a State cannot include income from investment in bonds and lands outside of the State.

"Where a State statute requires that a corporation, doing both interstate and intrastate business, return its

gross receipts from all sources, the taxing feature of the statute cannot be construed as relating only to receipts from intrastate commerce, and sustained separately in that respect.

"The court cannot reshape a taxing statute which includes elements beyond the State's power of taxation, simply because it embraces elements that it might have reached had the statute been drawn with a different measure and intent."

[9] In the case at bar it does not appear how much of the income was derived from business done in Virginia, nor does the statute of 1916 provide any method by which that fact could be ascertained, but the administrative officers saw that they could not enforce the provisions of the statute as to income derived from business done outside of the State, and, the statute being silent on the subject, they undertook to devise a scheme of their own by which to determine how much of the total income of the defendant in error was derived from business done in this State. The statute conferred no such authority upon them, and they had no such power. The legislature alone could exercise this power, and, having failed to do so, no such apportionment can be made, and the trial court was right in holding that there was no law in this State under which the income tax sought to be assessed could be collected on so much of the income as was derived solely from business done in this State. The legislature seems to have recognized this situation, for at its next session it removed the difficulty by declaring:

"Persons and corporations doing a part of their business within the State and a part without the State, and having offices or other regular places of business both within and without the State, shall be taxed only upon such income as is derived from business transacted and property located within the State, which may be determined by an alloca-

tion and separate accounting for such income when the books of such person or corporation show income realized from such transactions and property located within the State; * * *" Acts 1918, at p. 395.

We find no error in the judgment of the hustings court, and it is, therefore, affirmed.

*Affirmed.*