Present:  All the Justices

FIRST AMERICAN TITLE INSURANCE COMPANY

v.  Record No. 111394    OPINION BY JUSTICE DONALD W. LEMONS
                                    March 2, 2012
WESTERN SURETY COMPANY

UPON QUESTIONS OF LAW CERTIFIED BY THE UNITED STATES
COURT OF APPEALS FOR THE FOURTH CIRCUIT

Pursuant to Article VI, Section 1 of the Constitution of Virginia and Rule 5:40, we accepted the following certified questions from the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"), pursuant to its order entered August 2, 2011:

1.  Does the Virginia Consumer Real Estate Settlement Protection Act, Va. Code Ann. § 6.1-2.19 et seq. (recodified at Va. Code Ann. § 55-525.16 et seq.) ("CRESPA") recognize a private cause of action that may be asserted against a surety and the surety bond issued pursuant to Va. Code Ann. § 6.1-2.21(D)(3) (recodified at § 55-525.20(B)(3)) by a party other than the State Corporation Commission?

2.  If Question 1 is answered in the negative, does Virginia law nonetheless permit a cause of action against a surety and the surety bond issued pursuant to Va. Code Ann. § 6.1-2.21(D)(3) (recodified at § 55-525.20(B)(3)) by the assertion of a common law claim such as for breach of contract as in this case?

3.  If Questions 1 or 2 are answered in the affirmative, does a title insurance company have standing, either in its own right or as a subrogee of its insured, to maintain a cause of action against a surety and the surety bond issued pursuant to Va. Code Ann. § 6.1-2.21(D)(3) (recodified at § 55-525.20(B)(3))?

## I. Facts and Prior Proceedings

The facts, as presented in the certification order, are as follows. This action arose out of a real estate transaction involving an owner of real property in Alexandria, Virginia, who sought to refinance his existing mortgage debt through SunTrust Mortgage, Inc. ("SunTrust"). As part of the refinancing process, First American Title Insurance Company ("FATIC") provided title insurance for the refinancing to SunTrust through FATIC's title agent, First Alliance Title Company ("First Alliance"). First Alliance conducted the closing for the refinance transaction.

As required by the Virginia Consumer Real Estate Settlement Protection Act ("CRESPA"), former Code §§ 6.1-2.19 through -2.29 (1999 & Supp. 2001),[*] First Alliance obtained a $100,000 surety bond ("the CRESPA bond") from Western Surety Company ("Western"). The CRESPA bond included language stating that "any aggrieved person may maintain an action in its own name against this bond."

---

[*] At the time of its promulgation in 1997, CRESPA was codified at Code §§ 6.1-2.19 through -2.29. After the United States District Court for the Eastern District of Virginia entered judgment in this case, CRESPA was amended and recodified at Code §§ 55-525.16 through -525.32. Because the former section numbers were used by the District Court in its rulings, the Fourth Circuit in its certified questions, and by the parties in their briefs, this opinion likewise utilizes them herein.

At settlement, an employee of First Alliance diverted the funds received from SunTrust, which were designated to pay off the original mortgages on the property. As a result, the original mortgages were not paid and the deeds of trust securing that indebtedness were not released. Consequently, SunTrust's deeds of trust securing the refinance indebtedness were behind the original deeds of trust in order of priority.

Thereafter, the property owner defaulted under the original mortgages and the mortgagor foreclosed, resulting in the bankruptcy of the property owner. The original mortgagor's foreclosure on the property eliminated SunTrust's secured interest in the property, resulting in a loss of $734,296.09 to SunTrust. FATIC subsequently paid the full amount of this loss to SunTrust pursuant to the title insurance policy it had underwritten for the refinance transaction. FATIC then made a formal demand upon Western for $100,000, the full amount of the CRESPA bond. Western has refused to pay FATIC, claiming that no private cause of action can be brought against a statutory bond created pursuant to CRESPA.

FATIC brought this action against Western and First Alliance in the Circuit Court of Fairfax County, and Western removed the action to the United States District Court for the Eastern District of Virginia ("District Court"). In its complaint, FATIC asserted three breach of contract claims, all

3

based upon Western's failure to pay FATIC under the CRESPA Bond. Specifically, FATIC brought the cause of action on its own behalf (Count I), as subrogee of SunTrust, arguing that it became subrogated to SunTrust's rights after FATIC made full payment of SunTrust's claim under the title insurance policy (Count II), and pleaded in the alternative that it was entitled to bring a claim as subrogee of First Alliance, based upon a settlement agreement in a separate action (Count III).

Western moved to dismiss the action, and the District Court granted Western's motion to dismiss Count III; however, the District Court denied Western's motion to dismiss Counts I and II and held that: (1) CRESPA did not preclude common law claims against the surety bond; and (2) FATIC had standing to assert a direct cause of action for breach of contract against Western as an aggrieved party. First Am. Title Ins. Co. v. W. Sur. Co., No. 1:09-cv-403, 2009 U.S. Dist. LEXIS 44231, at *3-*10 (E.D. Va. May 27, 2009). The parties subsequently filed motions for summary judgment, and the District Court granted summary judgment in FATIC's favor under Count I. First Am. Title Ins. Co. v. First Alliance Title, Inc., 718 F. Supp. 2d 669, 674, 684 (E.D. Va. 2010). The District Court did not reach FATIC's alternative grounds for relief in Count II. Id. at 674. Accordingly, the District Court held that Western was

obligated to pay FATIC the full amount of the CRESPA Bond and entered judgment in FATIC's favor for $100,000. Id. at 684.

Western appealed to the Fourth Circuit. The parties agreed that Virginia law applies and governs the resolution of this case. On August 2, 2011, the Fourth Circuit certified the above-recited questions to this Court. By order entered September 22, 2011, we accepted the certified questions.

## II. Analysis

### A. Certified Question One

CRESPA was created to "authorize existing <u>licensing authorities</u> in the Commonwealth . . . to require persons performing escrow, closing or settlement services to comply with certain consumer protection safeguards relating to licensing, financial responsibility and the handling of settlement funds." Former Code § 6.1-2.19(B) (emphasis added). It "applies only to transactions involving the purchase or financing of real estate" located in Virginia. Former Code § 6.1-2.19(C). CRESPA defines "[l]icensing authority" as the State Corporation Commission, the Virginia State Bar, or the Virginia Real Estate Board. Former Code § 6.1-2.20.

Significantly, CRESPA only provided for licensing authorities to fine and/or otherwise penalize a settlement agent who violates its provisions. Former Code § 6.1-2.27. Specifically, former Code § 6.1-2.27(A), titled "Penalties and

5

liabilities," provided that the appropriate licensing authority may order:

1. A penalty not exceeding $5,000 for each violation;

2. Revocation or suspension of the applicable licenses; and

3. Restitution to be made by the person violating this chapter in the amount of any actual, direct financial loss.

Accordingly, the District Court found that "[t]here is no doubt that actions for statutory violations of CRESPA must be brought by the state licensing authority." First Am. Title, 2009 U.S. Dist. LEXIS 44231, at *4 (emphasis in original). In so concluding, the District Court relied in part upon Stith v. Thorne, 247 F.R.D. 89, 95-96 (E.D. Va. 2007) (stating that "CRESPA [does not] provide for private causes of action"). Id. at *3-*4. In Stith, the United States District Court for the Eastern District of Virginia relied upon former Code § 6.1-2.19(B) – which stated that the purpose of CRESPA is to "authorize existing licensing authorities . . . to require persons performing escrow, closing or settlement services to comply with certain consumer protection safeguards" – to conclude that "CRESPA, by its own statutory language, is clear on the issue." Id. at 95-96 (emphasis in original).

We have held that "[when] a statute creates a right and provides a remedy for the vindication of that right, then that

6

remedy is exclusive unless the statute says otherwise." Vansant & Gusler, Inc. v. Washington, 245 Va. 356, 360, 429 S.E.2d 31, 33 (1993) (quoting School Bd. v. Giannoutsos, 238 Va. 144, 147, 380 S.E.2d 647, 649 (1989)). CRESPA expressly provides a remedy for violations of the statute, but that remedy exclusively provides licensing authorities the ability to fine and/or otherwise penalize settlement agents who violate the statute. Former Code § 6.1-2.27(A).

Significantly, the General Assembly has clearly provided for private causes of action against other bonds required by statute where it has intended to do so. See, e.g., Code § 6.2-1604 (providing, with regard to mortgage lender or mortgage broker bonds, that "[a]ny person who may be damaged by noncompliance of a licensee with any condition of such bond may proceed on such bond against the principal or surety thereon, or both, to recover damages"); Code § 6.2-1703(E) (providing, with regard to mortgage loan originator bonds, that "[a]ny person who may be damaged by noncompliance of a licensee with any condition of such bond may proceed on such bond against the principal or surety thereon, or both, to recover damages"). The General Assembly could have similarly provided for a private cause of action in CRESPA but it did not do so. See former Code §§ 6.1-2.19 through -2.29.

Accordingly, because CRESPA expressly states that its purpose is to authorize "licensing authorities . . . to require persons performing escrow, closing or settlement services to comply with certain consumer protection safeguards," former Code § 6.1-2.19(B) (emphasis added), and because CRESPA only provides for licensing authorities to fine and/or otherwise penalize a settlement agent who violates its provisions, former Code § 6.1-2.27, we hold that CRESPA does not provide for or recognize a private cause of action against a surety and the surety bond issued pursuant to former Code § 6.1-2.21(D)(3).

## B. Certified Question Two

FATIC maintains that it may pursue a common law breach of contract claim based upon the CRESPA bond. Consequently, FATIC's cause of action implicates the principle of Virginia law, relied upon by the District Court in this case, that "when the Virginia General Assembly wishes that a statute abrogate a common law right of action, such as one for breach of contract, it must say so expressly." First Am. Title, 2009 U.S. Dist. LEXIS 44231, at *5 (citing Peoples Sec. Life Ins. Co. v. Arrington, 243 Va. 89, 92, 412 S.E.2d 705, 707 (1992), for the proposition that, "to alter or abrogate the common law policy, the General Assembly must manifest its intent to do so"). Because CRESPA contains no abrogation clause, see former Code §§ 6.1-2.19 through -2.29, the District Court properly

8

concluded that "common law claims against the [CRESPA] bond may proceed." See First Am. Title, 2009 U.S. Dist. LEXIS 44231, at *5.

A statutory bond is a bond "required by statutory authority by State, county, district, or municipal officers, by fiduciaries appointed, created or recognized by law, or by parties in judicial proceedings, or by officers and agents of private corporations, taken in pursuance of authority conferred on them by their charters, or by general law." State v. Purcell, 5 S.E. 301, 305 (W. Va. 1888). Accordingly, the surety bond required by former Code § 6.1-2.21(D)(3) is a statutory bond. Nevertheless, a common law cause of action may be maintained against statutory bonds under certain circumstances. This is one of those situations.

Virginia follows the general rule that a statutory bond that either expands liability from the statute requiring the bond or conflicts with the statute is "void as to any condition imposed beyond what the law required, and good so far as it was in conformity with the act." Aetna Cas. & Sur. Co. v. Earle-Lansdell Co., 142 Va. 435, 442, 129 S.E. 263, 264 (1925). We have observed that this "rule has been frequently applied to . . . bonds of fiduciaries, as well as to bonds of public officials, and to those required where there were attachments,

injunctions, or other judicial proceedings."  Id. at 443, 129 S.E. at 265.

Significantly, however, we have also recognized "[t]he general rule, which is amply supported by reason and authority, [that if] the bond required of a surety cannot be upheld as a statutory bond, it is at least good as a common law voluntary obligation."  Stinson v. Board of Supervisors, 153 Va. 362, 375, 149 S.E. 531, 535 (1929).  See also Kiser v. Hensley, 123 Va. 536, 539, 96 S.E. 777, 778 (1918) (stating that statutory bonds "must substantially conform to the statutes authorizing their execution.  Unless they do so conform, while they may be good as common law bonds, they are not valid as statutory bonds").  It has been observed that "[t]he chief distinction between statutory and common-law bonds is that the obligee in the former is entitled to all the special privileges, remedies, and processes which are granted by the statute, while the common-law or voluntary bond stands upon the ground of any other contract."  Purcell, 31 W. Va. at 53, 5 S.E. at 305-06.

As we noted with approval in Stinson,

> The rule is well settled that a bond given . . . in pursuance of some requirement of law, may be valid and binding upon the parties as a voluntary or common law obligation, when not made with the formalities or executed in the mode provided by the statute under which it purports to have been given, and hence is not enforceable as a statutory bond, provided it is not in violation of law.  This rule rests on the principle, that,

> notwithstanding the instrument may not conform with the special requirements of a statute . . . in compliance with which the parties executed it, nevertheless <u>it is a contract voluntarily entered into upon a sufficient consideration, for a purpose not contrary to law, and therefore is obligatory on the parties to it in like manner as any other contract or agreement at the common law</u>.

153 Va. at 375-76, 149 S.E. at 535 (citing <u>Estate of Ramsey v. People</u>, 64 N.E. 549 (Ill. 1902); Floyd R. Mechem, A Treatise on the Law of Public Offices and Officers §§ 271-72, at 169-70 (1890)) (emphasis added). We have previously held, when addressing the question whether a bond sued upon contained a valid condition to pay the judgment in an attachment proceeding, that, "[w]ithout deciding whether or not the bond sued on is a valid statutory bond, we are of the opinion that it is a valid common law bond and that the obligors are liable to the obligee thereon." <u>Foster v. Wilson</u>, 139 Va. 82, 86, 90, 123 S.E. 527, 528-29 (1924).

Accordingly, while CRESPA does not recognize or provide for a private cause of action based upon a violation of the statute, Virginia law nonetheless permits a cause of action against a surety and the surety bond executed pursuant to CRESPA by the assertion of a common law claim, such as for breach of contract, as in this case.

C. Certified Question Three

11

CRESPA was created to "authorize existing licensing authorities in the Commonwealth . . . to require persons performing escrow, closing or settlement services to comply with certain consumer protection safeguards relating to licensing, financial responsibility and the handling of settlement funds."  Former Code § 6.1-2.19(B).  It "applies only to transactions involving the purchase or financing of real estate" located in Virginia.  Former Code § 6.1-2.19(C).  Significantly, CRESPA defines "[p]arty to the real estate transaction," with respect to each particular real estate transaction, as "a lender, seller, purchaser or borrower."  Former Code § 6.1-2.20.

Therefore, because CRESPA only applies "to transactions involving the purchase of or lending on the security of real estate," and because CRESPA explicitly defines the potential parties to a real estate transaction, the surety bond required by former Code § 6.1-2.21(D)(3) exists to protect those parties having an interest in the real estate transaction.  See former Code §§ 6.1-2.19 & -2.20.  FATIC, as SunTrust's title insurer in this case, is not one of the parties the CRESPA bond is meant to protect.  See id.  The issuance of a title insurance policy is a separate transaction and a separate issue from the settlement transaction involving the purchase of or lending on the security of real estate.

12

Accordingly, because a title insurance company is not one of the parties the CRESPA bond is meant to protect, we hold that a title insurance company does not have standing in its own right to maintain a cause of action against a surety and the surety bond issued pursuant to former Code § 6.1-2.21(D)(3).

However, Code § 38.2-207 provides that,

when any insurer pays an insured under a contract of insurance which provides that the insurer becomes subrogated to the rights of the insured against any other party the insurer may enforce the legal liability of the other party.  This action may be brought in its own name or in the name of the insured or the insured's personal representative.

The title insurance policies in this case provided that "[w]henever [FATIC] shall have settled and paid a claim under this policy, all right of subrogation shall vest in [FATIC, which] shall be subrogated to and . . . entitled to all rights [and] remedies which [SunTrust] would have had against any person or property in respect to the claim had this policy not been issued."  The title insurance policies further provide that FATIC has a "right of subrogation against non-insured obligors," including "the rights of [SunTrust] to indemnities, guaranties, [and] other policies of [i]nsurance or bonds."

As we have previously stated, "[s]ubrogation is, in its simplest terms, the substitution of one party in the place of

13

another with reference to a lawful claim, demand, or right so that the party that is substituted succeeds to the rights of the other." Yellow Freight Sys., Inc. v. Courtaulds Performance Films, Inc., 266 Va. 57, 64, 580 S.E.2d 812, 815 (2003). As a subrogee of SunTrust, FATIC steps into the shoes of SunTrust, may assert all rights belonging to SunTrust, and is the real party in interest with respect to the rights to which it has succeeded in any litigation to enforce those rights. See Allstate Ins. Co. v. Hechinger Co., 982 F. Supp. 1169, 1172 (E.D. Va. 1997) (stating that "[a] subrogee that has paid out claims to its insured[] is the real party in interest in the subrogation litigation based on those claims. And as real party in interest, the insurer-subrogee owns the substantive rights on which it sues") (emphasis omitted); In re Hutcherson, 50 B.R. 845, 851 (Bankr. E.D. Va. 1985) (observing that "Virginia follows the generally accepted view of subrogation that the subrogee steps into the shoes of the insured and is both entitled to assert the rights of the insured and is bound by any defenses valid against the insured").

Accordingly, because the CRESPA bond required by former Code § 6.1-2.21(D)(3) exists to protect parties having an interest in the settlement transaction, including lenders such as SunTrust in this case, and because FATIC, as a subrogee of

14

SunTrust, has succeeded to SunTrust's relevant rights, we hold that a title insurance company, such as FATIC in this case, may have standing as a subrogee of its insured to maintain a cause of action against a surety and the surety bond issued pursuant to former Code § 6.1-2.21(D)(3).

### III. Conclusion

We hold that: (1) CRESPA does not recognize a private cause of action that may be asserted against a surety and the surety bond issued pursuant to former Code § 6.1-2.21(D)(3); (2) Virginia law nonetheless permits a cause of action against a surety and the surety bond executed pursuant to CRESPA by the assertion of a common law claim; and (3) a title insurance company may have standing, not in its own right, but as a subrogee of its insured, to maintain a cause of action against a surety and the surety bond issued pursuant to former Code § 6.1-2.21(D)(3). Accordingly, we answer certified question one in the negative and certified questions two and three in the affirmative.

Certified question 1 answered in the negative.
Certified question 2 answered in the affirmative.
Certified question 3 answered in the affirmative.

15