PRESENT: All the Justices

JEFFREY S. SMALL, AS CLERK OF
 THE CIRCUIT COURT OF THE CITY
 OF FREDERICKSBURG, VIRGINIA,
 INDIVIDUALLY AND ON BEHALF OF
 ALL OTHERS SIMILARLY SITUATED

                                           OPINION BY
v. Record No. 130317            CHIEF JUSTICE CYNTHIA D. KINSER
                                        SEPTEMBER 12, 2013
FEDERAL NATIONAL MORTGAGE
 ASSOCIATION,
 A/K/A FANNIE MAE, ET AL.

           UPON A QUESTION OF LAW CERTIFIED BY THE
                UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA

     The United States District Court for the Eastern District

of Virginia entered an order of certification requesting that

this Court exercise jurisdiction pursuant to Article VI, Section

1 of the Constitution of Virginia and Rule 5:40, and answer the

following questions of law:

          1.) Under Virginia law, does a clerk of
              court possess statutory standing to
              initiate a lawsuit, in his official
              capacity, to enforce the real estate
              transfer tax on the recording of
              instruments?

          2.) If a clerk of court does possess
              authority to bring suit in his official
              capacity as described in Certified
              Question No. 1, does Virginia law
              authorize him to do so as a class
              representative on behalf of all clerks
              of court throughout the Commonwealth?

Because the ministerial duties of a clerk of court do not extend

to enforcing the state taxes at issue, we answer the first

certified question in the negative and accordingly do not address the second certified question.

RELEVANT FACTS AND PRIOR PROCEEDINGS[1]

Jeffrey S. Small, in his official capacity as clerk of the Circuit Court of the City of Fredericksburg, filed a putative class action in the United States District Court for the Eastern District of Virginia (the federal district court) against the Federal National Mortgage Association (Fannie Mae), and the Federal Home Loan Mortgage Corporation (Freddie Mac).[2] Purporting to represent the class of all clerks of court in the Commonwealth, Small alleged that Fannie Mae and Freddie Mac had failed to pay the taxes imposed by Code §§ 58.1-801 and -802.

Code § 58.1-801 levies "[o]n every deed admitted to record, except a deed exempt from taxation by law . . . a state recordation tax." Code § 58.1-802(A) imposes an additional tax, to be paid by the grantor, "on each deed, instrument, or writing by which lands, tenements or other realty sold is granted, assigned, transferred, or otherwise conveyed to, or vested in

---

[1] The pertinent facts are taken from the certification order in Small v. Federal National Mortgage Ass'n, No. 3:12CV487-HEH (E.D. Va. Feb. 20, 2013).

[2] The term "clerk of court" as used in the certified questions and in this opinion refers to the position created by Article VII, Section 4 of the Constitution of Virginia.

the purchaser, or any other person, by such purchaser's direction."[3]

Small further alleged that Fannie Mae and Freddie Mac had improperly claimed exemption from paying the taxes as governmental entities.  Small requested that the federal district court certify the class action and prayed for, among other things, a declaratory judgment holding that the defendants are not exempt governmental entities and are therefore required to pay the real estate transfer taxes when recording instruments.

Among other defenses, Fannie Mae and Freddie Mac asserted that Small lacked the authority as clerk of court to bring an enforcement action under Code §§ 58.1-800, et seq.  The federal district court ordered the parties to brief the issue and, after reviewing the parties' arguments, determined that no controlling authority on the question exists.  The court stated:

> Clearly, a clerk of court is vested with the ministerial duty to assess and collect Virginia's recordation tax whenever he records a deed.  But, he is not explicitly authorized to initiate an enforcement action under Virginia law. . . . This Court has found no controlling authority interpreting the applicable statutes, one way or the other.

Pursuant to Rule 5:40(a), a certified question must be "determinative in any proceeding pending before the certifying

---

[3] In this opinion, we will refer to both taxes collectively as the "real estate transfer taxes."

court."  The certified questions in this case are determinative because if Small does not have standing to bring the action against the defendants to enforce collection of the real estate transfer taxes, the case will be dismissed.  Accordingly, we accepted the certified questions of law by order entered February 28, 2013.

ANALYSIS

The first certified question asks whether Small has "statutory standing."  Under federal law, the concept of statutory standing "applies only to legislatively-created causes of action and concerns whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action."  CGM, LLC v. Bellsouth Telecomm., Inc., 664 F.3d 46, 52 (4th Cir. 2011) (internal quotation marks omitted).  "[T]he statutory standing inquiry" addresses "whether the plaintiff 'is a member of the class given authority by a statute to bring suit.'"  Id. (quoting In re Mutual Funds Inv. Litig., 529 F.3d 207, 216 (4th Cir. 2008)).  The inquiry at the heart of statutory standing is whether the legislature "has accorded this injured plaintiff the right to sue the defendant to redress his injury."  Graden v. Conexant Sys. Inc., 496 F.3d 291, 295 (3rd Cir. 2007); see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 97 n.2 (1998) (statutory standing deals with "whether this plaintiff has a

4

cause of action under the statute").  Determining whether a plaintiff has statutory standing is therefore "simply statutory interpretation."  Graden, 496 F.3d at 295; see also Washington-Dulles Transp., Ltd. v. Metropolitan Washington Airports Auth., 263 F.3d 371, 377 (4th Cir. 2001) ("[W]hether [the legislature] intended to confer standing on a litigant . . . to bring an action under [the statute at issue] is essentially one of statutory construction.").

Although the term "statutory standing" does not appear in this Court's jurisprudence, the concept does.  "The purpose of requiring standing is to make certain that a party who asserts a particular position has the legal right to do so and that his rights will be affected by the disposition of the case." Goldman v. Landsidle, 262 Va. 364, 371, 552 S.E.2d 67, 71 (2001); see also Livingston v. Virginia Dep't of Trans., 284 Va. 140, 154, 726 S.E.2d 264, 272 (2012) (same).  When a plaintiff files an action under a particular statute, as Small has done here, the standing inquiry does not turn simply on whether the plaintiff has "a personal stake in the outcome of the controversy," Goldman, 262 Va. at 371, 552 S.E.2d at 71, or whether the plaintiff's "rights will be affected by the disposition of the case."  Livingston, 284 Va. at 154, 726 S.E.2d at 272 (quoting Westlake Props. v. Westlake Point Prop. Owners Ass'n, 273 Va. 107, 120, 639 S.E.2d 257, 265 (2007)).

5

Rather, the plaintiff must possess the "legal right" to bring the action, which depends on the provisions of the relevant statute.

The Court's analysis in Concerned Taxpayers v. County of Brunswick, 249 Va. 320, 455 S.E.2d 712 (1995), is illustrative. There, the plaintiffs brought a suit to enforce provisions of the Virginia Public Procurement Act, Code §§ 11-35 to -80 (the Procurement Act). Id. at 330, 455 S.E.2d at 718. Because the Procurement Act "provide[d] remedies for individuals or entities who have been denied rights conferred by the [Procurement] Act," the Court examined those statutes to determine whether the plaintiffs had standing. Id. The Court concluded that the plaintiffs were "not among those afforded remedies" under the Procurement Act and thus lacked standing to assert violations of it.[4] Id.

Small asserts statutory standing in his capacity as clerk of court. The position of clerk of court, among others, is created by Article VII, Section 4 of the Constitution of Virginia. Section 4 states that the "duties and compensation of

_____

[4] For examples of other statutes that confer "a legal right" on a particular plaintiff to institute an action, see Code §§ 8.01-50(C) (allowing personal representative of a deceased person to bring an action for wrongful death); 15.2-2314 (conferring standing on certain aggrieved persons to appeal a decision of a board of zoning appeals); 55-79.80(B) (permitting condominium unit owners' association to litigate any actions related to common elements); 59.1-204(A) (defining who may bring a private action under Virginia Consumer Protection Act).

such officers," including clerks, "shall be prescribed by general law or special act." Va. Const. art. VII, § 4. As is true with other constitutional officers established by Article VII, Section 4, the "duties of a clerk are prescribed by statute."[5] First Virginia Bank-Colonial v. Baker, 225 Va. 72, 80, 301 S.E.2d 8, 12 (1983).

This Court has consistently characterized the duties of a clerk of court as "ministerial" in nature. Town of Falls Church v. Myers, 187 Va. 110, 119, 46 S.E.2d 31, 36 (1948); Harvey v. Chesapeake & Potomac Tel. Co., 198 Va. 213, 218, 93 S.E.2d 309, 313 (1956); see also Patrick v. Commonwealth, 115 Va. 933, 935-38, 78 S.E. 628, 629-30 (1913) (holding clerk of court acted outside scope of express statutory authority by drawing and placing more names on a venire facias than permitted by the applicable statute); Page v. Taylor, 16 Va. (2 Munf.) 492, 498-99 (1811) (holding clerk not liable for non-execution of a bond because his duties did not extend to taking the bond, a judicial act to be done in open court). By definition, ministerial acts are non-discretionary. See Black's Law Dictionary 28 (9th ed. 2009); Moreau v. Fuller, 276 Va. 127, 135, 661 S.E.2d 841, 845-46 (2008) ("A ministerial act is one which a person performs in a given state of facts and prescribed manner in obedience to the

---

[5] See Hilton v. Amburgey, 198 Va. 727, 729, 96 S.E.2d 151, 152 (1957) (sheriffs); McGinnis v. Nelson County, 146 Va. 170, 172, 135 S.E. 696, 697 (1926) (commissioners of revenue).

mandate of legal authority without regard to, or the exercise of, his own judgment upon the propriety of the act being done.") (internal quotation marks omitted).

According to Small, his authority to bring an action to enforce the collection of unpaid real estate transfer taxes derives from Code §§ 58.1-801 and -802 and other statutes addressing those taxes. Whether those provisions impose a ministerial duty to bring such an action, i.e., whether Small has statutory standing, is thus a question of statutory interpretation.

As with all issues of statutory interpretation, we are bound by the plain language of the statutes at issue. Jenkins v. Mehra, 281 Va. 37, 47, 704 S.E.2d 577, 583 (2011). "[W]e examine a statute in its entirety, rather than by isolating particular words or phrases." Cummings v. Fulghum, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001). "It is a cardinal rule of construction that statutes dealing with a specific subject must be construed together in order to arrive at the object sought to be accomplished." Alston v. Commonwealth, 274 Va. 759, 769, 652 S.E.2d 456, 462 (2007) (internal quotation marks omitted). In addition, "[o]ne of the basic principles of statutory construction is that where a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise." School

Bd. of the City of Norfolk v. Giannoutsos, 238 Va. 144, 147, 380 S.E.2d 647, 649 (1989); see First Am. Title Ins. Co. v. Western Sur. Co., 283 Va. 389, 397, 722 S.E.2d 637, 640 (2012) (holding that the Virginia Consumer Real Estate Protection Act's express remedies for violations of the statute did not include a private cause of action against a surety and the surety bond).

Certain principles govern our review of the tax statutes at issue here. "Taxes can only be assessed, levied and collected in the manner prescribed by express statutory authority." City of Richmond v. SunTrust Bank, 283 Va. 439, 442, 722 S.E.2d 268, 270 (2012) (internal quotation marks omitted). "'[A]n executive officer who seeks to enforce a tax must always be able to put his finger upon the statute which confers such authority.'" Id. (quoting Commonwealth v. P. Lorillard Co., 129 Va. 74, 82, 105 S.E. 683, 685 (1921)). The General Assembly alone "determin[es] what machinery shall be exercised in carrying out the provisions of a law authorizing the imposition of taxes." P. Lorillard Co., 129 Va. at 81, 105 S.E. at 685. Taxing statutes are "construed most strongly against the government and are not to be extended beyond the clear import of the language used." City of Lynchburg v. English Constr. Co., 277 Va. 574, 583, 675 S.E.2d 197, 201 (2009) (internal quotation marks omitted).

Title 58.1 of the Code governs taxation in the Commonwealth. Within that title, the General Assembly

9

separately addressed three types of taxes, each in its own subtitle: "Taxes Administered by the Department of Taxation," (Subtitle I); "Taxes Administered by Other Agencies," (Subtitle II); and "Local Taxes," (Subtitle III).[6] The real estate taxes at issue in this case are found in Chapter 8 of Subtitle I, titled "State Recordation Tax," Code §§ 58.1-800, et seq., and are administered by the Department of Taxation (the Department). As stated previously, Code § 58.1-801(A) levies a tax "[o]n every deed admitted to record, except a deed exempt from taxation by law," and Code § 58.1-802(A) imposes an additional tax on each deed or other instrument by which realty is conveyed.

Pursuant to Code § 58.1-812(A), "no deed, deed of trust, contract or other instrument shall be admitted to record without the payment of the tax imposed thereon by law" except as otherwise provided in Chapter 8. The tax imposed under Code § 58.1-802(B) "shall be collected as provided in § 58.1-812 and the clerk shall return taxes collected hereunder one-half into the state treasury and one-half into the treasury of the locality." With regard to the assessment and collection of the real estate transfer taxes, Code § 58.1-812(B) states:

> The tax on every deed, deed of trust,
> contract or other instrument shall be

---

[6] Title 58.1 also includes a fourth subtitle addressing the State Lottery Tax.

10

> determined and collected by the clerk in whose office the instrument is first offered for recordation. The clerk may ascertain the consideration of the deed or of the instrument, the actual value of the property conveyed, and the qualification of the deed or instrument for any exemption claimed by inquiry, affidavit, declaration or other extrinsic evidence acceptable to the clerk.

Clerks of court collecting taxes imposed under Code § 58.1-802 are "entitled to compensation for such service at five percent of the amount so collected and paid." Code § 58.1-802(B); see also Code § 58.1-3176.

Small contends his authority to file the enforcement action arises from his affirmative duty, as clerk of court, to collect the real estate transfer taxes. See Code §§ 58.1-802(B) and -812(B). Small notes that clerks of court are compensated according to the amount of real estate transfer taxes collected and thus have "a personal stake" in their proper collection. Because clerks of court cannot force the Department to bring enforcement actions, Small argues, they cannot protect their interests without the ability to file enforcement actions. Finally, Small maintains that there is nothing inconsistent with allowing both clerks of court and the Department to enforce these tax statutes because, according to Small, the General Assembly created a "multi-track system of tax collection." We disagree with Small.

11

The General Assembly granted exclusive authority to the Department to collect the real estate transfer taxes if they remain unpaid for thirty days.

> The Department may assess and collect any tax imposed by this chapter[, i.e., Chapter 8,] which has remained uncollected for thirty days. The Department, prior to collecting such tax, shall give notice to the clerk of court in whose office the tax was to be collected. The Department may then proceed to assess and collect the unpaid tax in the same manner and by the same methods used for the collection of any state tax administered by the Department.
>
> Any local tax collected hereunder in conjunction with the collection of a state tax by the Department shall be deposited into the state treasury. The Comptroller shall, by warrant drawn on the Treasurer of Virginia, remit to the proper city or county any amounts due to such city or county.

Code § 58.1-813. Thus, after notifying the clerk "in whose office the tax was to be collected," the Department takes over the collection of any unpaid taxes. Code § 58.1-813.

Moreover, the Department may assess and collect the unpaid taxes "in the same manner and by the same methods used for the collection of any state tax." Code § 58.1-813. The real estate transfer taxes are state taxes. See Code §§ 58.1-800, et seq.[7] Chapter 18 of Subtitle I addresses the "Enforcement, Collection,

---

[7] The General Assembly has authorized the governing body of any city or county to impose "a city or county recordation tax in an amount equal to one-third of the amount of state recordation tax." Code § 58.1-814. This case does not involve such a local recordation tax.

Refund, Remedies and Review of State Taxes."  Code §§ 58.1-1800, et seq.  Under this Chapter, the General Assembly granted to the Department and the Tax Commissioner numerous enforcement mechanisms.  Code § 58.1-1803 permits the Department to appoint a collector in any jurisdiction to collect delinquent state taxes that were "assessed at least 90 days" previously.  The Tax Commissioner is authorized to collect "by levy, by a proceeding in court, or by any other means available . . . under the laws of the Commonwealth" any tax imposed by Subtitle I.  Code § 58.1-1802.1.  Code § 58.1-1806 provides that

> [t]he payment of any state taxes . . . may
> . . . be enforced by action at law, suit in
> equity or by attachment in the same manner,
> to the same extent and with the same rights
> of appeal as now exist or may hereafter be
> provided by law for the enforcement of
> demands between individuals. . . .  Such
> proceedings shall be instituted and
> conducted in the name of the Commonwealth.

No provision in these or any other statutes expressly authorize clerks of court to utilize such enforcement mechanisms to collect unpaid real estate transfer taxes.  See City of Richmond, 283 Va. at 442, 722 S.E.2d at 270 ("Taxes can only be assessed, levied, and collected in the manner prescribed by express statutory authority.") (internal quotation marks omitted).

Nevertheless, Small contends that the taxes at issue here have a local character because the locality receives one-half of

13

the amount collected under Code § 58.1-802(A).  See Code § 58.1-802(B).  Even so, the General Assembly specifically designated the real estate transfer taxes as state taxes to be enforced by the Department.  Moreover, clerks of court are not authorized to enforce local taxes either.  Just as Chapter 18 of Subtitle I of Title 58.1 addresses the enforcement of state taxes, Chapter 39 of Subtitle III provides for the enforcement and collection of local taxes.  Code §§ 58.1-3900, et seq.  Mirroring Code § 58.1-1806, Code § 58.1-3953 permits the use of "action[s] at law" to enforce the payment of local taxes, and such proceedings "shall be instituted . . . in the name of the county, city, or town in which such taxes are assessed."  Code § 58.1-3954.  These provisions bolster what is already apparent: the General Assembly authorized the Department to enforce state taxes, and localities to enforce local taxes.  And in neither case is the clerk of court authorized to collect unpaid real estate transfer taxes by filing an enforcement action.

The statutory enforcement mechanisms for state and local taxes also undercut Small's reliance on the word "collect[]" in Code § 58.1-812.  According to Small, Code § 58.1-812's command that clerks of court "shall . . . collect[]" the real estate transfer taxes is mandatory and encompasses the filing of an enforcement action.  Indeed, Small is compelled to construe Code § 58.1-812 in this manner in light of our holdings that the

14

duties of clerks of court are purely ministerial.  See Harvey,

198 Va. at 218, 93 S.E.2d at 313.  But, as the statutes for

collecting and enforcing state taxes make clear, filing an

enforcement action is necessarily discretionary.  State

officials charged with enforcing the state taxes are given a

range of options for collecting unpaid taxes, including filing

enforcement proceedings.  See Code §§ 58.1-1803 ("may appoint a

collector") (emphasis added); -1802.1 ("may be collected by

levy") (emphasis added); -1806 ("may . . . be enforced by action

at law . . . or by attachment") (emphasis added); see also

Harper v. Virginia Dep't of Taxation, 250 Va. 184, 194, 462

S.E.2d 892, 898 (1995) ("[T]he word 'may' is prima facie

permissive, importing discretion.") (internal quotation marks

omitted).  Small asserts, therefore, that a clerk of court is

compelled to file an enforcement action for unpaid real estate

transfer taxes, while the Department has the discretion to do

so.  This position is untenable as a matter of both statutory

interpretation and practicality.

Reading the statutory concept of "collect" in its entire

context, see Cummings, 261 Va. at 77, 540 S.E.2d at 496, we

conclude that to "collect" the real estate transfer taxes is a

purely ministerial act, as the federal district court noted.

When an instrument is offered for recordation, the clerk of

court "ascertain[s] the consideration of the deed or of the

15

instrument, the actual value of the property conveyed," and the applicability of any exemption claimed. Code § 58.1-812(B). The clerk of court then "determine[s] and collect[s]" the taxes. Id. Under the statute, the clerk of court is prohibited from recording the deed or instrument until the taxes have been paid and no other action is authorized in the absence of payment. Code §§ 58.1-802, -812(A). In contrast, Code § 58.1-813 directs the Department to collect unpaid taxes, and expressly authorizes the "manner and . . . methods" of enforcement outlined in Chapter 18 of Title 58.1. See Newberry Station Homeowners Ass'n v. Board of Supervisors, 285 Va. 604, 616, 740 S.E.2d 548, 554 (2013) ("[W]hen the General Assembly has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional.") (internal quotation marks omitted).

In sum, Small fails to "put his finger upon the statute" which authorizes him to enforce the real estate transfer taxes. See City of Richmond, 283 Va. at 442, 722 S.E.2d at 270 (internal quotation marks omitted). To imply from the word "collect" the authority to file an enforcement proceeding would "extend[] [Code § 58.1-812] by implication beyond the clear import of the statutory language." Shelor Motor Co. v. Miller, 261 Va. 473, 478, 544 S.E.2d 345, 348 (2001). The General

16

Assembly "determin[ed] what machinery shall be exercised in carrying out the provisions" of Code §§ 58.1-800, et seq. See P. Lorillard Co., 129 Va. at 81, 105 S.E. at 685. That machine is the Department. The Department's remedies for enforcing the real estate transfer taxes are exclusive, and we will not imply a power the General Assembly has not seen fit to grant. See Giannoutsos, 238 Va. at 147, 380 S.E.2d at 649.

The first certified question asks whether "a clerk of court possess[es] statutory standing to initiate a lawsuit, in his official capacity, to enforce the real estate transfer tax on the recording of instruments." For the reasons stated, we answer that question in the negative. Because the second certified question is premised on the first question being answered affirmatively, we need not address the second certified question.

Certified question one
answered in the negative.

JUSTICE McCLANAHAN, concurring in part and dissenting in part.

I agree with the majority's reasoning and conclusion with respect to a clerk of court's statutory authority to sue to collect alleged unpaid real estate transfer taxes. I disagree, however, with the majority deciding that a clerk also does not have statutory authority to file a declaratory judgment action

17

regarding a party's qualification for exemption from transfer taxes, because that issue has not been put before the Court.[1]

As the Court's opinion notes, "Small requested . . . among other things, a declaratory judgment holding that the defendants are not exempt governmental entities and are therefore required to pay the real estate transfer taxes when recording instruments." Indeed, Small's complaint contained three counts: the first for defendants' alleged violations of Virginia's statute imposing the real estate transfer taxes, the second for unjust enrichment on the same basis, and the third for a declaratory judgment "that the Defendants are not exempt from payment of transfer taxes under state and/or federal law." In the prayer for relief, Small separately requested "[t]hat the Court enter judgment awarding the Plaintiff and the class damages equal to the transfer taxes not paid" and a "judgment declaring that the practice complained of herein is in violation of law and that Defendants are subject to payment of the transfer taxes and are not governmental entities or

_____

[1] Because the Court's holding with respect to a clerk's standing to collect alleged unpaid transfer taxes is entirely dispositive of that issue, the Court has the power under Rule 5:40(a) to answer the certified question. See Wyatt v. McDermott, 283 Va. 685, 691, 691 n.1, 725 S.E.2d 555, 557-58, 557 n.1 (2012) (finding Rule 5:40(a) satisfied because the certified question was "determinative" of plaintiff's one tortious interference with parental rights claim among plaintiff's "numerous" other pending claims, which included conspiracy, fraud, and constructive fraud).

instrumentalities exempt therefrom or otherwise exempt therefrom under law."

In its discussion framing the certified question to this Court,[2] the federal district court focused on the collection of taxes. Likewise, neither party argued to this Court whether a clerk is or is not statutorily authorized to sue for a declaratory judgment regarding a party's qualification for exemption from the transfer taxes.

The majority's position is that its opinion decides this unargued issue, because it believes that Small's declaratory judgment count seeks a ruling that the defendants were not exempt at the time the relevant deeds were recorded and that therefore the declaratory judgment count is a part of, not a separate claim from, Small's claims to collect the alleged unpaid taxes. Thus, the majority's analysis subsumes and decides the issue of whether Small has statutory standing to pursue declaratory relief.

Small's counts seeking to collect the alleged unpaid taxes and Small's count for a declaratory judgment ask a court to consider the defendants' qualification for exemption; but their similarity ends there. The issue in the collection counts is

_____

[2] The dispositive certified question asked: "Under Virginia law, does a clerk of court possess statutory standing to initiate a lawsuit, in his official capacity, to enforce the real estate transfer tax on the recording of instruments?"

19

whether the defendants were exempt at the time they offered instruments for recordation in the past.  That determination, in turn, would dictate whether the alleged unpaid taxes were previously owed.  In contrast, Small's declaratory judgment count is future-looking by seeking to resolve the controversy over defendants' exemption status that has not yet fully matured into real injury.  See Charlottesville Area Fitness Club Operators Ass'n v. Albemarle Cnty., 285 Va. 87, 99, 737 S.E.2d 1, 7 (2013) (declaratory judgment proceeding is intended to permit the declaration of rights before they mature).

Since success on his collection counts requires Small to obtain a judgment that the defendants were not exempt in the past, the majority's position that Small's declaratory judgment count seeks the very same ruling renders that claim superfluous.[3] To the contrary, given the forward-looking nature of Small's declaratory judgment count, as well as the high frequency with which these defendants record instruments, the declaratory judgment count seeks a separate ruling regarding the defendants'

_____

[3] For example, in a suit seeking damages for breach of contract, plaintiffs are neither required nor permitted to file a separate claim for a declaratory judgment that the defendant breached the terms of the contract.  Instead, plaintiffs simply prove the breach as part of the legal claim for damages, and the existence of a normal contract remedy makes declaratory relief unavailable.  USAA Cas. Ins. Co. v. Randolph, 255 Va. 342, 346, 497 S.E.2d 744, 746 (1998); Liberty Mut. Ins. Co. v. Bishop, 211 Va. 414, 421, 177 S.E.2d 519, 524 (1970); American Nat. Bank, etc., Co. v. Kushner, 162 Va. 378, 386, 174 S.E. 777, 780 (1934).

20

exemption status going forward, so that the parties avoid the almost certain disagreement that would spawn a new round of litigation.

Moreover, while I agree with the Court's reasoning with respect to a clerk's authority to file a claim to collect alleged unpaid transfer taxes, that reasoning hardly yields the majority's conclusion that a clerk does not have statutory standing to file a declaratory judgment action regarding a party's exemption status. The Court's opinion holds that a clerk's statutory duty to "collect" transfer taxes under Code § 58.1-812(B) is ministerial and thus does not authorize the discretionary act of suing to recover alleged unpaid taxes. In the next sentence of the same statute, however, the General Assembly provided that "[t]he clerk may ascertain . . . the qualification of the deed or instrument for any exemption." Code § 58.1-812(B) (emphasis added). As the Court's opinion makes clear, where the General Assembly uses "may" it grants discretionary authority. Since a clerk's duty to decide exemption from the transfer taxes is discretionary, by the Court's own reasoning, this discretionary authority arguably empowers a clerk with statutory standing to file a declaratory judgment action to determine a party's exemption.[4]

---

[4] Again, because this question was not before the Court, I express no view on it.

Certainly, if Small were authorized to proceed on his two collection counts, then his declaratory judgment count would be rendered moot, since the issue of the defendants' exemption would necessarily be decided on the merits as part of the collection action. But because the Court today holds that Small is without statutory standing to file such a collection action, the issue of the defendants' qualification for exemption will not be resolved in the course of those proceedings.

Despite Small's inability to obtain a decision regarding defendants' exemption status through proving that they were not exempt in the past, he seeks resolution of this issue going forward through his declaratory judgment count. Of course, as a clerk of court Small must have statutory standing to pursue this form of action. Yet, this issue was not put before the Court, and the reasoning in the Court's opinion does not logically explain the majority's conclusion that a clerk is without such statutory authority. Consequently, it remains an open question whether a clerk is statutorily empowered to file a declaratory judgment action regarding qualification for exemption and, in turn, whether Small has statutory standing to litigate the declaratory judgment count of his present federal action.